STATE OF NORTH CAROLINA v. DAVID LAMAR APPLEWHITE

No. COA07-1399

(Filed 6 May 2008)

**1. Evidence— expert opinion testimony—failure to make special request for witness to be qualified as expert**

The trial court did not err in a murder and discharging a firearm into occupied property case by admitting expert opinion testimony even though the witness was never qualified as an expert because: (1) a party's objection to a witness's qualifications as an expert is waived if it is not made in apt time upon this special ground, and a mere general objection to the content of the witness's testimony will not ordinarily suffice to preserve the matter for subsequent review; (2) although the trial court made no finding of the witness's qualifications as an expert, in the

STATE v. APPLEWHITE

[190 N.C. App. 132 (2008)]

absence of a special request by the defense, such a finding is deemed implicit in the trial court's admission of the challenged testimony, and (3) this issue was not preserved for review since defendant failed to make a special request to have the agent qualified as an expert.

**2. Evidence— cross-examination—document—failure to make offer of proof**

The trial court did not err in a murder and discharging a firearm into occupied property case by sustaining the State's objection to defendant's cross-examination of an agent regarding a document found in decedent's car because: (1) an exception to the exclusion of evidence cannot be sustained where the record failed to show what the witness's testimony would have been had he been permitted to testify, and in the instant case defense counsel told the trial court he did not want to make an offer of proof regarding the paperwork; and (2) the record was insufficient to establish what the essential content or substance of the agent's testimony would have been.

**3. Evidence— hearsay—exception—excited utterance**

The trial court did not err in a murder and discharging a firearm into occupied property case by permitting a witness to testify about statements decedent made to her shortly before his death under N.C.G.S. § 8C-1, Rule 803(2) as an excited utterance because: (1) the witness consistently described decedent as being scared, upset, and excited when he entered the house; (2) in light of decedent's statement that defendant pulled a gun on decedent, it was reasonable that decedent was still upset when he spoke to the witness; and (3) decedent's statements were made sufficiently close to the event and were made while he was upset and had not had time to reflect.

**4. Evidence— direct examination—leading questions**

The trial court did not abuse its discretion by allowing the State to use leading questions during the direct examination of a State's witness because: (1) N.C.G.S. § 8C-1, Rule 611(c) provides that leading questions may be used during the direct examination of a hostile witness; and (2) the witness testified that she had been defendant's girlfriend for eleven years, that she loved defendant, that they had two children together, and that she did not want defendant to go to jail, thus demonstrating her bias in favor of defendant and her adversity to the State.

**5. Appeal and Error— preservation of issues—failure to object—failure to assign error**

Although defendant contends the trial court erred by allowing the State to impeach a witness's testimony with extrinsic evidence of a prior inconsistent statement she made to police, this argument was not preserved because: (1) defendant neither objected at trial nor assigned error to the admission of the evidence; (2) the argument did not correspond to the assignment of error; and (3) defendant did not argue plain error.

**6. Evidence— testimony—gunshot residue on headrest—no requirement for item to be introduced**

The trial court did not err in a murder and discharging a firearm into occupied property case by allowing a forensic chemist with the SBI to testify about the presence of gunshot residue on a headrest taken from defendant's vehicle even though the headrest was not admitted into evidence because there is no requirement under North Carolina law that an item be introduced into evidence in order for an expert to testify about it.

**7. Criminal Law— instructions—self-defense—perceived inconsistency of jury verdict**

The trial court's instructions on self-defense were not erroneous and did not render invalid a jury verdict acquitting defendant of felony murder based upon the underlying felony of discharging a weapon into occupied property and finding him guilty of the underlying felony.

**8. Appeal and Error— preservation of issues—failure to raise issue at trial**

Although defendant contends the trial court violated his right against double jeopardy by sentencing him for the offense of discharging a firearm into occupied property, this issue is waived based on defendant's failure to properly raise this issue at trial.

Appeal by defendant from judgments entered 12 July 2007 by Judge Charles H. Henry in Wayne County Superior Court. Heard in the Court of Appeals 16 April 2008.

*Attorney General Roy A. Cooper III, by Assistant Attorney General LaToya B. Powell, for the State.*

*Sue Genrich Berry, for defendant-appellant.*

STATE v. APPLEWHITE

[190 N.C. App. 132 (2008)]

STEELMAN, Judge.

Where defendant failed to request that a witness be qualified as an expert and made only a general objection to the contents of the witness's testimony, defendant's objection to the witness's qualifications has not been preserved for appellate review. Where defendant made no offer of proof concerning excluded testimony, defendant has not preserved the issue for appellate review. Where decedent's statements were admissible as an excited utterance, the trial court did not err in admitting the statements. Where the witness was adverse to the State, the trial court did not abuse its discretion in allowing the State to use leading questions in its direct examination of the witness. Defendant cites no authority for his argument about the admission of expert testimony regarding physical evidence where the physical evidence was not introduced into evidence, and his argument is without merit. A perceived inconsistency in the jury verdict does not invalidate the verdict. Where defendant failed to argue double jeopardy at trial, he has not preserved this argument for appellate review.

## I. Factual and Procedural Background

On 24 December 2005, Reginald Reid (decedent) was living with his fiancé, Latosia Hudson (Hudson). At approximately noon on that day, decedent left his residence to pick up his son from his prior marriage to Tammy Hardy Reid (Reid). Decedent drove to Reid's house, and was told that his son was at his grandmother's house. Decedent drove to the grandmother's house, and arrived at the home simultaneously with David Applewhite (defendant) and defendant's girlfriend, Tiffany Hardy (Hardy), Reid's sister. Words were exchanged between decedent and defendant and both left the residence. Defendant took his two children home and then went to Auto Zone. Decedent returned to his residence. He had a brief conversation with Hudson about his confrontation with defendant and then left again in his vehicle.

Wayne County E.M.S. received a call at approximately 12:39 p.m. on 24 December 2005 and went to Peachtree Street, where paramedics found a vehicle resting partially on the curb. The car was in drive, its engine was running; and the doors were shut. Decedent was sitting in the driver's seat and was slumped over towards the passenger side. Paramedics confirmed that he was deceased. An autopsy revealed that a gunshot wound was the cause of death.

Reid arrived at the crime scene and confirmed the identity of decedent, her ex-husband. Reid informed officers about the alterca-

tion between decedent and defendant earlier that day. Based on this information, a "be on the look out" dispatch was issued for defendant.

At approximately 4:00 p.m., defendant went to the Goldsboro Police station to speak with police. Defendant told Sergeant Gary Lynch about a confrontation between defendant and decedent that occurred earlier in 2005, including a warrant taken out by defendant against decedent as a result of this encounter. When Sergeant Lynch questioned defendant about whether defendant saw decedent on Peachtree Street, defendant became agitated and left the police station.

Pat Matthews (Agent Matthews), a special agent with the State Bureau of Investigation (SBI), and Jeffrey Clifford (Officer Clifford), a crime scene specialist, were dispatched to investigate the crime scene. Agent Matthews and Officer Clifford executed a search warrant for defendant's vehicle and subsequently examined the vehicle to determine whether a firearm had been fired from inside the vehicle.

A warrant was issued for defendant's arrest on the evening of 24 December 2005. Defendant returned to the police station and was placed under arrest.

On 6 November 2006, defendant was indicted for first-degree murder and discharging a firearm into occupied property. The jury found defendant guilty of voluntary manslaughter and discharging a weapon into occupied property. The trial court found defendant to be a prior record level I for felony sentencing purposes. Defendant was sentenced to a term of 64 to 86 months imprisonment for the charge of voluntary manslaughter. A consecutive sentence of 20 to 33 months was imposed for the charge of discharging a weapon into occupied property. Defendant appeals.

## II.  Expert Testimony

**[1]** In his first argument, defendant contends that the trial court erred in admitting expert opinion testimony when the witness was never qualified as an expert. We disagree.

At trial, Agent Matthews testified that she had been employed as a field agent with the SBI since 1986, and that she had worked as a local law enforcement officer for five years before joining the SBI. Agent Matthews testified that she recovered a handgun from decedent's vehicle. The prosecutor asked Agent Matthews whether, in her

opinion, the handgun had been fired "in a close time, approximately, to the victim's death." Defense counsel made an objection, which was overruled. Agent Matthews responded that she saw no indication that the gun had been fired. Defendant made another general objection when the prosecutor asked Agent Matthews to explain the basis of her opinion, which was overruled.

A party's objection to a witness's qualifications as an expert "is waived if it is not made in apt time upon this special ground, and a mere general objection to the content of the witness's testimony will not ordinarily suffice to preserve the matter for subsequent review." *State v. Riddick*, 315 N.C. 749, 758, 340 S.E.2d 55, 60 (1986) (quoting *State v. Hunt*, 305 N.C. 238, 243, 287 S.E.2d 818, 821 (1982)).

Although the trial court made no finding of Agent Matthews's qualifications as an expert, "in the absence of a special request by the defense, such a finding is deemed implicit in the trial court's admission of the challenged testimony." *State v. Perry*, 69 N.C. App. 477, 481, 317 S.E.2d 428, 432 (1984) (citation omitted). In order to challenge Agent Matthews's testimony on appeal, counsel for defendant should have made a special request to have Agent Matthews qualified as an expert. *See id.* In the absence of such a request, and in light of defendant's general objection to the contents of Agent Matthews's testimony, we hold that this issue has not been preserved for our review. This argument is without merit.

### III. Exclusion of Evidence

[2] In his second argument, defendant contends that the trial court erred in sustaining the State's objection to defendant's cross-examination of Agent Matthews regarding a document found in decedent's car. We disagree.

At trial, defense counsel questioned Agent Matthews about a legal paper she collected from the glove box of decedent's car. The prosecutor objected and the objection was sustained. Thereafter, defense counsel again inquired as to the nature of information removed from decedent's vehicle. The prosecutor objected and the objection was again sustained.

"It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) (citations omitted).

In the instant case, at the close of the State's evidence, the trial court asked counsel for defendant whether he wanted to make an offer of proof regarding the paperwork. Defense counsel responded in the negative. The trial court offered defendant an opportunity to recall Agent Matthews for further cross-examination, and defense counsel responded, "I understand that . . . But I'm not making any proffer to the Court to show what she would have said or what the documents would say."

Defendant urges us to "assume that the legal paperwork was the warrant the Defendant had taken out against the decedent for threatening him with a gun." However, the only indication in the record concerning the substance of Agent Matthews's testimony is the State's exhibit log, which lists the paperwork found in defendant's vehicle as "miscellaneous paperwork from Ford explorer."

We hold that the record is insufficient to establish what the "essential content or substance" of Agent Matthews's testimony would have been. *See Simpson* at 371, 334 S.E.2d at 61. "Without a showing of what the excluded testimony would have been, we are unable to say that the exclusion was prejudicial." *Id.* The evidence in the record is not adequate for judicial review, and this argument is dismissed.

Defendant argues that the State's objection was not raised in a timely manner and was waived. Although defendant correctly cites the rule that "the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character," *State v. Augustine*, 359 N.C. 709, 720, 616 S.E.2d 515, 525 (2005) (citations omitted), the rule is inapplicable to the facts of the instant case.

## IV. Witness Testimony

[3] In his third argument, defendant contends the trial court erred when it permitted Hudson to testify about statements decedent made to her shortly before his death. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 803 lists hearsay exceptions for which the availability of the declarant is immaterial. N.C. Gen. Stat. § 8C-1, Rule 803 (2007). Subsection (2) is the "Excited Utterance" exception, which is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C. Gen. Stat. § 8C-1, Rule 803(2).

In order to fall within this hearsay exception, there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication. . . . Although the requirement of spontaneity is often measured in terms of the time lapse between the startling event and the statement, . . . the modern trend is to consider whether the delay in making the statement provided an opportunity to manufacture or fabricate the statement.

*State v. Smith*, 315 N.C. 76, 86-87, 337 S.E.2d 833, 841 (1985) (internal citations and quotations omitted).

The State offered testimony from Hudson that decedent told her "he had just went to his son's grandmother's house to pick up his son, and [defendant] pulled up behind him and pulled a gun on him, and he left because he don't want no trouble, and he came home." The State also offered Hudson's testimony that decedent told her that defendant followed him home and "looked at him and shook his head as if 'Yeah, I know where you live now.' " The trial court conducted a *voir dire* of Hudson, heard arguments from both parties, and determined that her testimony regarding statements made to her by decedent was admissible under Rules 803(2) and 803(3).

In the instant case, the lapse in time between the confrontation of defendant and decedent and decedent's description of the confrontation to Hudson was the time it took for decedent to drive home from his son's grandmother's house. Hudson stated that decedent had been gone only fifteen to twenty minutes. Decedent told Hudson that defendant followed him home, and this statement was made almost simultaneously with the event. The likelihood that decedent had an opportunity to deliberately misrepresent his confrontations with defendant is remote.

Further, Hudson stated that when decedent came into the house, he seemed "a little scared, maybe concerned at the same time, and maybe even a little upset at the same time." Hudson consistently described decedent as being scared, upset, and excited when he entered the house. In light of decedent's statement that defendant pulled a gun on decedent, it is reasonable that decedent was still upset when he spoke to Hudson.

We hold that decedent's statements were made sufficiently close to the event and were made while he was upset and had not had time to reflect. *See Smith* at 86-87, 337 S.E.2d at 841. These statements were admissible as an excited utterance under Rule 803(2). Accord-

ingly, we need not address whether this statement was also admissible under 803(3). This argument is without merit.

## V.  Hostile Witness

**[4]** In his fourth argument, defendant contends that the trial court erred when it allowed the State to use leading questions in the direct examination of the State's witness Tiffany Hardy. We disagree.

Leading questions may be used during the direct examination of a hostile witness. N.C. Gen. Stat. § 8C-1, Rule 611(c) (2007). "Whether to allow a leading question on direct examination clearly falls within the discretion of the trial court." *State v. York*, 347 N.C. 79, 90, 489 S.E.2d 380, 386-87 (1997) (citation omitted). A trial court will be reversed for an abuse of discretion only upon a showing that its decision was manifestly unsupported by reason. *Id.* (citations omitted).

In the instant case, Hardy testified that she had been defendant's girlfriend for eleven years, that she loved defendant, and that they had two children together. She also testified that she did not want defendant to go to jail. This testimony demonstrates Hardy's bias in favor of defendant, and thus her adversity to the State. *See State v. Dickens*, 346 N.C. 26, 44-45, 484 S.E.2d 553, 562-63 (1997).

We hold that the trial court did not abuse its discretion in allowing the State to use leading questions in its direct examination of Hardy. This argument is without merit.

**[5]** Defendant attempts to make an additional argument that the trial court erred in allowing the State to impeach Hardy's testimony with extrinsic evidence of a prior inconsistent statement she made to police. However, defendant neither objected at trial nor assigned error to the admission of this evidence. Thus, this argument has not been preserved for our review. *See* N.C. R. App. P. 10(b)(1); *see also State v. Purdie*, 93 N.C. App. 269, 278, 377 S.E.2d 789, 794 (1989) ("When, as here, the argument in the brief does not correspond to the assignment of error, that assignment should be deemed abandoned under Rule 28 of the Rules of Appellate Procedure."). Defendant does not argue plain error, and we hold that there is none. N.C. R. App. P. 10(c)(4).

## VI.  Physical Evidence

**[6]** In his fifth argument, defendant contends the trial court committed plain error when it allowed Elizabeth Patel, a forensic chemist

with the SBI, to testify about the presence of gunshot residue on a headrest taken from defendant's vehicle when the headrest was not admitted into evidence. We disagree.

Defendant argues that "the trial court is without authority to permit an expert witness to testify about items of physical evidence which [have] not been introduced into evidence." There is no requirement under the law of North Carolina that an item be introduced into evidence in order for an expert to testify about it. Defendant cites no authority for this argument, and we hold that it is without merit.

### VII. Jury Instructions

[7] In his sixth argument, defendant contends that the trial court erred in its jury instructions on self-defense on the grounds that the instructions were ambiguous and unclear and resulted in an incongruous verdict. We disagree.

Defendant contends that the jury verdict is inconsistent in that he was acquitted of felony murder based upon the underlying felony of discharging a weapon into occupied property but was found guilty of the underlying felony. Defendant argues that this verdict "can only be explained by the jury's inability to intelligently determine the issues presented with such confusing instructions."

"It is well established in North Carolina that a jury is not required to be consistent and that incongruity alone will not invalidate a verdict." *State v. Rosser*, 54 N.C. App. 660, 661, 284 S.E.2d 130, 131 (1981) (citations omitted).

A review of the trial court's jury instructions on self-defense reveals that those instructions were detailed, thorough, and closely paralleled the applicable North Carolina Pattern Jury Instructions. Defendant makes no argument regarding the form and substance of the court's instructions, and it is clear that his actual argument is about what he perceives to be an inconsistent jury verdict, as opposed to any alleged instructional error.

We hold the trial court's jury instructions on self-defense were clear and unambiguous. The perceived inconsistency of the jury verdict does not render it invalid.

Defendant concedes that he failed to object to the trial court's jury instructions. Therefore, our review of the jury instructions is limited to plain error. N.C. R. App. P. 10(b)(1); 10(c)(4); *State v. Cummings*, 352 N.C. 600, 613, 536 S.E.2d 36, 47 (2000). Defend-

IN RE B.L.H. & Z.L.H.

[190 N.C. App. 142 (2008)]

ant has failed to show error, much less plain error. This argument is without merit.

## VIII. Sentencing

**[8]** In his final argument, defendant contends that the trial court erred in sentencing him for the offense of discharging a firearm into occupied property on the grounds that the sentence violates his constitutional protection against double jeopardy. We disagree.

"[T]he failure of a defendant to properly raise the issue of double jeopardy before the trial court precludes reliance on the defense on appeal." *State v. Thompson*, 314 N.C. 618, 621, 336 S.E.2d 78, 79-80 (1985) (citations omitted).

Defendant contends that the jury verdict acquitting him of felony murder, in which the underlying felony was discharging a firearm into occupied property, precludes his conviction of the offense of dis-charging a firearm into occupied property. However, defendant concedes that he failed to make a double jeopardy argument at trial. In light of defendant's failure to raise this issue at trial, we hold that the trial court did not err in entering judgments against him for discharging a firearm into occupied property. *See State v. Roope*, 130 N.C. App. 356, 362, 503 S.E.2d 118, 123 (1998).

Defendant has voluntarily abandoned his remaining assignment of error, and we do not review this issue.

NO ERROR.

Judges HUNTER and STEPHENS concur.