MORGAN, Justice.
**414 This juvenile delinquency case concerns the sufficiency of evidence required to survive a juvenile's motion to dismiss a petition alleging disorderly conduct. In light of the relatively low threshold of evidence needed to send such a matter to the finder of fact, we conclude that the district court here did not err in denying the juvenile's motion to dismiss that charge. Accordingly, we reverse the decision of the Court of Appeals with respect to this issue.
*295 Factual Background and Procedural History
On 8 November 2016, two juvenile petitions were filed in the District Court, Buncombe County, alleging that the juvenile T.T.E. was delinquent because of his commission of the offenses of (1) disorderly conduct and (2) resisting a public officer. The disorderly conduct petition alleged that the juvenile, a junior at Clyde A. Erwin High School (EHS), "did intentionally cause a public disturbance at [EHS], Buncombe County NC, by engaging in violent conduct. This conduct consisted of throwing a chair toward another student in the school's cafeteria." The petition regarding the allegation of resisting a public officer stated that the juvenile was delinquent as a result of "[f]leeing the scene of a disorderly conduct incident, resisting the officer's attempts to escort him to the office, having to be handcuffed to be safe, and cursing at the officer."
At the adjudication hearing that was conducted on 20 and 23 February 2017, the State called two witnesses. Deputy Mickey Ray of the Buncombe County Sheriff's Office was the school resource officer at EHS on the date of the juvenile's allegedly delinquent behavior. Deputy Ray testified that on the date of the incident giving rise to the juvenile petition, he was in the cafeteria during "Warrior period," a time slot during the school day when students can receive tutoring and "get to just come **415 out and relax a little bit, maybe hang out in the cafeteria, or hang out on other parts of the campus, just to get a little break from everything else." Deputy Ray stated that he saw the juvenile "pick up a chair and throw it across the cafeteria" before the juvenile ran out of the room. Deputy Ray pursued the juvenile for twenty-five to thirty yards, and once Deputy Ray caught up to the student, the officer grabbed the juvenile while still behind him. In response to Deputy Ray's instruction to "come back with me," the juvenile "resisted," saying, "No. No. No."
Deputy Ray brought the juvenile to the school lobby and searched him, at which point "all the other kids started trying to get involved." According to the officer's testimony, the juvenile was cursing at Deputy Ray, who decided to put handcuffs on the juvenile. Other students also began to yell at the officer, and Deputy Ray felt the need to handcuff and later to arrest one of the students who had tried to involve himself in the situation with the juvenile. When asked, "Based on ... how the other students reacted" to the juvenile's act of throwing the chair and then resisting Deputy Ray's attempt to stop and question him, whether the incident "in any way disrupt[ed] or disturb[ed] the process of the school," specifically with regard to students' efforts to go to classes, Deputy Ray responded, "Yes, sir. Absolutely."
Upon further examination at trial, Deputy Ray provided additional details about the school cafeteria incident. He related that the juvenile "chucked" the chair underhandly, but he was unable to say whether the juvenile had thrown the chair "at" anyone in particular; however, the juvenile told Deputy Ray that he had thrown the chair at the juvenile's brother-another EHS student-in the course of "playing or something." Regarding his perception of the juvenile's intent behind the act of throwing the chair, Deputy Ray was asked the following question at trial and responded as follows:
Q. Did it appear to you that, based on what you saw with the chair throwing incident, that [juvenile] was playing, or did it seem like something that was a little more violent?
A. I couldn't really tell, because just like I told you at the beginning, it's just something I ain't never seen before in my 10 years of working as an SR [school resource officer] in the city schools and the county schools. That's the first time I've seen something like that.
On cross-examination, Deputy Ray testified that he did not see any students have to duck or otherwise maneuver to avoid the chair **416 thrown by the juvenile. Deputy Ray also tempered the testimony that he offered on direct examination by stating that he could not definitively say whether the juvenile's actions were actually disruptive to other students as they went to class. *296 In addition to Deputy Ray's account, the district court also heard testimony from the State's witness Tate McQueen, a history teacher and soccer coach at EHS. McQueen did not see the chair-throwing incident in the cafeteria but did observe Deputy Ray pursuing the juvenile after the occurrence. McQueen followed Deputy Ray in order to provide assistance as the situation unfolded. At trial, McQueen offered his description of what he observed:
When I rounded the corner from the main foyer to the language arts, or foreign language hall, I observed Officer Ray with a student. At that time, the student was pulling away from Officer Ray. I did not see the moment in which they first came in contact. I observed Officer Ray telling the student to come with him. The student was pulling away.
And as the student and Officer Ray were coming back into the main foyer towards the office, we had a significant safety issue with students gravitating towards that situation. Officer Ray was trying to deal with one student, and there were, I would say, three, four, upwards of five students that were now engaging in this process. Others were stopping instead of going to class. Once that release bell rings, they have about five minutes to get to class. If you've been to Erwin, you know how expansive our building is, so if they are not moving, they are going to be late for class. They will be late for instruction. At that time, I turned as a buffer for Officer Ray. I was parroting what he was saying, which is "Go to class," while also trying to get the student to calm down and stop. There was a lot of profanity that was being directed at Officer Ray from [juvenile], and there were others. My involvement at that point was to plead with the student to please stop, and to be calm, and that he was making it worse. "Just stop and breathe. You are making it worse."
At this point, another student reaches in and physically grabs [juvenile] to pull him. Officer Ray is turning to tell students to go to class. The student that has made contact with [juvenile] to pull him is refusing to go to class **417 and comply. At that point, Officer Ray took a hand and grabbed that student and had both students, essentially, held. They slid down the wall maybe two feet, maybe three, to the conference room. They went in. I went in behind them, so I observed that part of the process.
The juvenile did not testify or present any evidence. Through counsel, the juvenile moved to dismiss both petitions on the basis that the State had presented insufficient evidence to support an adjudication of delinquency.
The district court denied the motion to dismiss and found as fact that "[j]uvenile threw a chair in the cafeteria where students and teacher[s] were present and ran away [illegible]. Juvenile refused to cooperate with officer when asked and became belligerent. Juvenile delayed the investigation and caused a scene instead of cooperating." The district court adjudicated the juvenile to be delinquent for disorderly conduct and for resisting a public officer. On 27 February 2017, the district court entered an order imposing a Level 1 disposition. The juvenile gave notice of appeal.
In the Court of Appeals, the juvenile argued that his petition for disorderly conduct under N.C.G.S. § 14-288.4 was defective because it did not specify the subsection of the statute that he had allegedly violated. The juvenile also challenged on appeal the district court's denial of his motion to dismiss both petitions due to insufficiency of the evidence. The entire Court of Appeals panel agreed that the evidence was insufficient to support the juvenile's adjudication of delinquency for resisting a public officer, and the court therefore vacated the adjudication and disposition for this charge. In re T.T.E. , --- N.C.App. ----, 818 S.E.2d 324, 328-29 (2018).[2] However, the Court of Appeals panel divided regarding the sufficiency of the evidence to support the disorderly conduct adjudication. The majority agreed with the juvenile that
[t]he evidence was not sufficient to show that the juvenile fought, engaged in violent conduct, or created an imminent risk of fighting or other violence. Although there *297 were other students in the cafeteria-a very large room-when the juvenile threw a chair, no other person was nearby, nor did the chair hit a table or another chair or anything else. Juvenile then ran out of the cafeteria. This is not "violent conduct or ... conduct creating the threat **418 of imminent fighting or other violence." No one was hurt or threatened during the event and juvenile did not escalate the situation by yelling, throwing other things, raising fists, or other such conduct that along with the throwing of the chair could be construed to indicate escalating violent behavior. Throwing a single chair with no other person nearby and without attempting to hit another person and without hitting even any other item in the cafeteria is not disorderly conduct as defined by North Carolina General Statute § 14-288.4(a)(1).
Id. at 327-28 (citing and quoting N.C.G.S. § 14-288.4(a)(1) ). The Court of Appeals consequently vacated the juvenile's adjudication of delinquency on the charge of disorderly conduct as well as the disposition that the district court had entered upon that delinquency adjudication. Id. at 328. In light of this outcome, the majority did not address the juvenile's contention that there was a fatal defect in the disorderly conduct petition.
The dissenting judge disagreed with the majority regarding the sufficiency of the evidence on the charge of disorderly conduct, opining that
viewing this evidence in the light most favorable to the State, the safety resource officer's testimony that juvenile threw a chair, which the juvenile admitted he was throwing at another student, his brother, provided substantial evidence of violent conduct, from which the trial court could reasonably determine that juvenile's act of throwing a chair at another student amounted to violent conduct.
Id. at 330 (Arrowood, J., concurring in part and dissenting in part). Regarding the alleged defect in the disorderly conduct petition, the dissenting judge further opined:
The petition at issue alleged juvenile violated N.C. Gen. Stat. § 14-288.4 when he "did intentionally cause a public disturbance at Clyde A. Erwin High School, Buncombe County NC, by engaging in violent conduct. This conduct consisted of throwing a chair toward another student in the school's cafeteria." Because this language closely tracks the statutory language of N.C. Gen. Stat. § 14-288.4(a)(1), "[d]isorderly conduct is a public disturbance intentionally caused by any person who ... [e]ngages in fighting or other violent conduct or in conduct creating the threat of imminent fighting or other violence[,]" and the petition lists the offense as **419 N.C. Gen. Stat. § 14-288.4, I would hold that, based on the totality of the circumstances, the petition averred the charge with sufficient specificity that juvenile was clearly apprised of the conduct for which he was charged. See State v. Simpson , 235 N.C. App. 398, 402-403, 763 S.E.2d 1, 4-5 (2014) (holding an indictment was not fatally defective even though it did not list which subsection of a statute the defendant was charged with violating because it was clear from the indictment which subsection was charged). Therefore, the petition was not fatally defective, and the trial court had jurisdiction to enter the adjudication and disposition orders against juvenile.
Id. at 329-30.
The State filed a motion for temporary stay and a petition for writ of supersedeas on 1 August 2018. This Court allowed the motion to stay on 2 August. On 21 August 2018, the State filed its notice of appeal in this Court based upon the dissent in the lower appellate court. We allowed the State's petition for writ of supersedeas on 4 September 2018.
Analysis
As an initial matter, we briefly address the question of whether the delinquency petition charging disorderly conduct sufficiently alleged a violation of N.C.G.S. § 14-288.4. "[A] petition in a juvenile action serves essentially the same function as an indictment in a felony prosecution and is subject to the same requirement that it aver every element of a criminal offense, with sufficient specificity that the accused is clearly apprised of the conduct for which he is being charged." In re Griffin , 162 N.C. App. 487, 493, 592 S.E.2d 12, 16 (2004) ; see also *298 In re Burrus , 275 N.C. 517, 530, 169 S.E.2d 879, 887 (1969) ("Notice must be given in juvenile proceedings which would be deemed constitutionally adequate in a civil or criminal proceeding; that is, notice must be given the juvenile and his parents sufficiently in advance of scheduled court proceedings to afford them reasonable opportunity to prepare, and the notice must set forth the alleged misconduct with particularity." (citation omitted)), aff'd sub nom. McKeiver v. Pennsylvania , 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality opinion). As the dissenting opinion in the present case correctly noted, the petition here closely tracked the language of N.C.G.S. § 14-288.4. This Court has long held that
the "true and safe rule" for prosecutors in drawing indictments is to follow strictly the precise wording of the statute because a departure therefrom unnecessarily raises doubt **420 as to the sufficiency of the allegations to vest the trial court with jurisdiction to try the offense. Nevertheless, it is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime. Thus, ... an indictment shall not be quashed "by reason of any informality or refinement" if it accurately expresses the criminal charge in "plain, intelligible, and explicit" language sufficient to permit the court to render judgment upon conviction.
State v. Sturdivant , 304 N.C. 293, 310-11, 283 S.E.2d 719, 731 (1981) (footnote and citations omitted). Here, the State followed the articulated "true and safe rule" by substantially employing the terminology of N.C.G.S. § 14-288.4 in the delinquency petition that initiated the disorderly conduct action. Because the petition averred the offense of disorderly conduct with sufficient specificity to clearly apprise the juvenile here of the offense with which he was charged, the district court was properly cloaked with subject-matter jurisdiction over this alleged offense.
With the jurisdictional issue having been addressed, we turn to the substantive issue regarding the sufficiency of the evidence presented by the State at trial to withstand the juvenile's motion to dismiss.
This Court performs de novo review of the denial of a motion to dismiss for insufficiency of the evidence in order to determine "only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." State v. Turnage , 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008) (emphasis added) (quoting State v. Crawford , 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) ); see also, e.g. , State v. Hunt , 365 N.C. 432, 436, 722 S.E.2d 484, 488 (2012). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Turnage , 362 N.C. at 493, 666 S.E.2d at 755 (quoting Crawford , 344 N.C. at 73, 472 S.E.2d at 925 ). In undertaking this determination, "[a]ny contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." State v. Miller , 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009) (citations omitted). "[S]o long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also **421 'permits a reasonable inference of the defendant's innocence.' " Id. at 99, 678 S.E.2d at 594 (quoting State v. Butler , 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002) ).
"Disorderly conduct is a public disturbance intentionally caused by any person who" perpetrates one or more acts listed in the General Statutes. N.C.G.S. § 14-288.4(a) (2017). In the case at bar, the disorderly conduct petition averred that the juvenile was delinquent for a violation of section 14-288.4(a)(1). Although the juvenile petitions did not specifically cite subdivision (a)(1) of that statute, we note that the juvenile's alleged act of "throwing a chair toward another student in the school's cafeteria" placed him in the category of "any person who ... [e]ngages in fighting or other violent conduct or in conduct creating the threat of imminent fighting or other violence."
*299 Id. § 14-288.4(a)(1). A "public disturbance" is defined as:
Any annoying, disturbing, or alarming act or condition exceeding the bounds of social toleration normal for the time and place in question which occurs in a public place or which occurs in, affects persons in, or is likely to affect persons in a place to which the public or a substantial group has access. The places covered by this definition shall include, but not be limited to, highways, transport facilities, schools , prisons, apartment houses, places of business or amusement, or any neighborhood.
Id. § 14-288.1(8) (2017) (emphasis added). Accordingly, this Court must determine whether, as we view the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference, see Miller , 363 N.C. at 98, 678 S.E.2d at 594, substantial evidence was presented at the adjudication hearing that the juvenile perpetrated an "annoying, disturbing, or alarming act or condition exceeding the bounds of social toleration normal for the time and place" by means of "[e]ngag[ing] in fighting or other violent conduct or in conduct creating the threat of imminent fighting or other violence." N.C.G.S. §§ 14-288.1(8), -288.4(a)(1).
The juvenile contends that the evidence presented by the State could support an inference that he was simply engaged in horseplay with his brother, that he did not intend to harm any person or property, and that he did not actually cause harm to any person or property. While we do not disagree that such inferences could be drawn from the evidence, any contradictions or conflicts in the evidence are resolved in favor of the State on a motion to dismiss for insufficiency of the evidence. The **422 juvenile's misconstruction of the law is likewise exhibited in the erroneous conclusion of the Court of Appeals majority that "[t]hrowing a single chair with no other person nearby and without attempting to hit another person and without hitting even any other item in the cafeteria is not disorderly conduct as defined by North Carolina General Statute § 14-288.4(a)(1)." In re T.T.E. , 818 S.E.2d at 328 (majority opinion). Based on its own review of the evidence presented at the adjudication hearing, the majority of the lower appellate court erroneously decided to ultimately determine whether the juvenile committed the offense of disorderly conduct. But the proper question before the district court, the Court of Appeals, and now this Court, when considering the juvenile's motion to dismiss based on all of the evidence presented at the adjudication hearing, which must be viewed in the light most favorable to the State, is whether the evidence merely could support an inference that the juvenile committed the offense of disorderly conduct. See Miller , 363 N.C. at 98, 678 S.E.2d at 594.
In the light most favorable to the State, the evidence presented at the adjudication hearing tended to show that the juvenile threw a chair at his brother across the EHS cafeteria where other students were present. The juvenile then ran out of the cafeteria and through the school's hallways. The juvenile's behavior occurred during a part of the school day when students were not in class and were allowed to move relatively freely about the campus in order to receive tutoring and to relax. As a result, a number of EHS students were able to observe the interaction between the juvenile and Deputy Ray after the school resource officer saw the juvenile throw the chair and after the deputy was able to successfully pursue the juvenile. While the school resource officer executed his responsibilities which included a search of the juvenile, the juvenile cursed at the deputy. After the school resource officer opted to place the juvenile in handcuffs, other students also directed profane words toward the deputy in raised voices and became actively involved in the interaction between the two, resulting in the officer handcuffing and arresting another EHS student. The deputy considered the juvenile's act of throwing the chair as constituting conduct that disrupted or disturbed the process of school, including the efforts of students to attend their classes in a timely fashion. EHS faculty member McQueen described the circumstances as constituting "a significant safety issue with students gravitating towards that situation" to the extent *300 that the teacher and coach "turned as a buffer for Officer Ray."
Upon viewing this evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference as required **423 by Miller , we conclude that substantial evidence was presented at the adjudication hearing that the juvenile perpetrated an "annoying, disturbing, or alarming act ... exceeding the bounds of social toleration normal for" Clyde A. Erwin High School during the course of the instructional day through a public disturbance as defined by N.C.G.S. § 14-288.1(8) by "engaging in violent conduct" by "throwing a chair toward another student in the school's cafeteria." As a result, the juvenile petition alleged a violation of N.C.G.S. § 14-288.4, which defines the public disturbance of disorderly conduct. The evidence presented by the State was sufficient to warrant the denial of the juvenile's motion to dismiss the petition that alleged his commission of the delinquent act of disorderly conduct. In applying the Miller standard to the current case, the district court properly denied the juvenile's motion to dismiss.
Based on the foregoing considerations, as to the issue before this Court on appeal, namely, whether the Court of Appeals majority erred in holding that the State's evidence was insufficient to support the adjudication for disorderly conduct, the decision of the Court of Appeals is reversed. Accordingly, we reverse the decision of the Court of Appeals vacating the adjudication and disposition orders relating to that offense. The Court of Appeals decision to vacate the adjudication and disposition orders entered in regard to the charge of resisting a public officer remains undisturbed.
REVERSED.

The resolution of the alleged offense of resisting a public officer is not before this Court.