IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-671

Filed 20 August 2024

New Hanover County, No. 21 JB 143

IN THE MATTER OF:

D.R.J.

Appeal by juvenile from adjudication order entered 17 August 2022 and disposition order entered 5 December 2022 by Judge Julius H. Corpening, II, in New Hanover County District Court. Heard in the Court of Appeals 16 April 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Michael T. Henry, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Heidi Reiner, for juvenile-defendant-appellant.*

ZACHARY, Judge.

Juvenile-Appellant "David"[1] appeals from the district court's juvenile adjudication and disposition orders adjudicating him delinquent on petitions for misdemeanor sexual battery, felony second-degree forcible rape, and felony incest, and placing him on probation and ordering his cooperation with placement into a sex-offender-specific treatment program. After careful review, we affirm the court's adjudication and disposition orders.

**BACKGROUND**

---

[1] We use the pseudonyms adopted by the parties to protect the identities of the juveniles involved in this matter. *See* N.C.R. App. P. 42(b).

On 12 July 2021, David's younger sister Claire shared with a friend that she feared that she might be pregnant, and the girls visited their middle school nurse. Claire told the nurse that she "was concerned she may be pregnant" because "[s]omething happened with [her] brother." After the school nurse explained what intercourse is, Claire confirmed that she and David had had intercourse. Claire also stated that David did not use a condom, and that she did not know "the last time [she] had a period[.]"

At this time, David and Claire were 15 and 13 years old, respectively, and they lived with their grandparents. Further, Claire has an intellectual disability such that "she basically functions at the level of a second grader and emotionally and mentally like an eight-year-old[.]"

Following her conversation with Claire, the school nurse conferred with the school's social worker, who decided to "take it forward and call the county[.]" That same day, Detective Kelsey Allen of the New Hanover County Sheriff's Office Crimes Against Children Unit interviewed Claire at school. The New Hanover County Department of Social Services removed Claire from the home that afternoon.

According to Claire, David slept in Claire's bedroom over the July 4th weekend to accommodate a family guest. Claire recalled that on the evening in question she was in bed when David entered her room and removed her clothing and underwear. Claire remembered that David was naked and that he touched her body with his hands, at one point "laying on top of [her.]" She said that David inserted his penis

into her vagina and "ma[d]e [her] hand touch his penis[.]" David told Claire not to tell anyone and then "left the room . . . [t]o go play Xbox."

On 29 July 2021, the State filed juvenile petitions alleging that David was delinquent for the commission of the offenses of felony incest, felony second-degree forcible rape, and misdemeanor sexual battery. On 26 July 2022, the State filed a fourth juvenile petition alleging that David committed the offense of felony crime against nature.[2]

David's adjudicatory hearing took place on 2 August 2022. On 17 August 2022, the district court entered an order adjudicating David delinquent on the misdemeanor sexual battery, felony second-degree forcible rape, and felony incest petitions. On 5 December 2022, the district court entered its disposition order, in which the court, *inter alia*, placed David on supervised probation and ordered that David "cooperate with placement in . . . a residential treatment facility [for] sex offense specific treatment[.]" David filed timely written notice of appeal.

## **DISCUSSION**

On appeal, David first argues that the district court "erred by failing to dismiss the second-degree forcible rape and sexual battery petitions because the State failed to prove the use of force, an essential element of each" offense. Alternatively, if the Court concludes that this issue was not preserved for appeal because David's counsel

---

[2] The State subsequently dismissed this petition.

failed to renew the motion to dismiss at the close of all evidence, David asks that this Court hold that he received ineffective assistance of counsel. Finally, David argues that "[w]here the State's case rested squarely on Claire's version of events[ ] the [district] court erred by excluding testimony from David and Claire's grandparents about prior instances of Claire conflating fictional television portrayals with her real life."

### *Motion to Dismiss for Insufficiency of the Evidence*

David first asserts that the district court "erred by failing to dismiss the second-degree forcible rape and sexual battery petitions," arguing that the State "failed to present substantial evidence that [he] used physical force beyond what was inherent in the sexual contact itself."

David concedes that although his counsel moved to dismiss the second-degree forcible rape and sexual battery petitions at the close of the State's evidence, he failed to renew the motion at the close of all evidence. *See In re Hodge*, 153 N.C. App. 102, 106–07, 568 S.E.2d 878, 881 (explaining that "a [juvenile] who moves to dismiss a charge based on insufficiency of the evidence after the close of the State's evidence waives the benefit of that objection if, after the motion is denied, the [juvenile] presents his own evidence" but "fails to move to dismiss the action at the close of all the evidence" (cleaned up)), *appeal dismissed and disc. review denied*, 356 N.C. 613, 574 S.E.2d 681 (2002); *see also* N.C.R. App. P. 10(a)(3). Thus, David lacks the right to

"assert the denial of his motion as grounds for relief on appeal." *Hodge*, 153 N.C. App. at 107, 568 S.E.2d at 881.

Nonetheless, David contends that review of the court's denial of his motion to dismiss is warranted under Rule 2. Pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, this Court may suspend the appellate rules and reach the merits of an otherwise unpreserved issue on direct appeal where necessary "to prevent manifest injustice to a party" that would result from sustaining an adjudication that lacked evidentiary support. *In re S.A.A.*, 251 N.C. App. 131, 134, 795 S.E.2d 602, 605 (2016) (citation omitted). Rule 2 is an "extraordinary step" that must be invoked cautiously; "inconsistent application of Rule 2 itself leads to injustice when some similarly situated litigants are permitted to benefit from it but others are not." *State v. Bishop*, 255 N.C. App. 767, 770, 805 S.E.2d 367, 370 (2017) (cleaned up), *disc. review denied*, 370 N.C. 695, 811 S.E.2d 159 (2018). "This residual power to vary the default provisions of the appellate procedure rules should only be invoked rarely and in exceptional circumstances . . . ." *In re A.W.*, 209 N.C. App. 596, 599, 706 S.E.2d 305, 307 (2011) (cleaned up).

Here, David's unpreserved argument is without merit, as explained below. Accordingly, in our discretion, we decline to invoke Rule 2 on this issue. *See In re I.W.P.*, 259 N.C. App. 254, 258, 815 S.E.2d 696, 701 (2018).

***Ineffective Assistance of Counsel***

In the alternative, David maintains that his counsel below provided ineffective assistance in failing to renew the motion to dismiss the second-degree forcible rape and sexual battery petitions at the close of all evidence, thus foreclosing our review of that issue. We are not persuaded.

To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that counsel's performance was deficient, and that this deficient performance prejudiced his defense. *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286, *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006). "Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (cleaned up). "[T]he two prongs of an ineffective assistance claim (attorney error and prejudice) need not be considered in any particular order. In fact, the [United States Supreme] Court [has] intimated that disposing of an ineffective assistance claim on the ground of lack of sufficient prejudice, if possible, is preferable." *State v. Dockery*, 78 N.C. App. 190, 192, 336 S.E.2d 719, 721 (1985).

Accordingly, we begin by determining whether "there is a reasonable probability that, but for counsel's" failure to renew the motion to dismiss on sufficiency grounds at the close of all evidence, "the result of the proceeding would have been different." *Allen*, 360 N.C. at 316, 626 S.E.2d at 286 (citation omitted).

Denial of a juvenile's motion to dismiss will be upheld if there is "substantial evidence (1) of each essential element of the offense charged and (2) of the juvenile's being the perpetrator of such offense." *In re K.M.M.*, 242 N.C. App. 25, 27, 774 S.E.2d 430, 431 (2015) (cleaned up). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *In re T.T.E.*, 372 N.C. 413, 420, 831 S.E.2d 293, 298 (2019) (citation omitted). "[C]ontradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." *Id.* (citation omitted). "So long as the evidence supports a reasonable inference of the [juvenile's] guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the [juvenile's] innocence." *Id.* at 420–21, 831 S.E.2d at 298 (cleaned up). Thus,

> [t]he bar to survive a . . . motion to dismiss for insufficiency of the evidence is low, such that . . . . if there be *any* evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, . . . the case should be submitted to the [finder of fact].

*State v. Taylor*, 379 N.C. 589, 611, 866 S.E.2d 740, 757 (2021) (citation omitted).

Both sexual battery and second-degree forcible rape include force as an element. "The crime of sexual battery is committed when any person, for the purpose of sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person by force and against the will of the other person." *In re J.U.*, 384 N.C. 618, 624, 887 S.E.2d 859, 864 (2023) (cleaned up); *accord* N.C. Gen. Stat. § 14-

- 7 -

27.33(a)(1) (2023). Similarly, "[a] person is guilty of second-degree forcible rape if the person engages in vaginal intercourse with another person . . . [b]y force and against the will of the other person . . . ." N.C. Gen. Stat. § 14-27.22(a)(1).

Our Supreme Court recently addressed the quantum of evidence required to satisfy the force element in the offense of sexual battery. *J.U.*, 384 N.C. at 625, 887 S.E.2d at 864. "[T]he requisite force may be established either by actual, physical force or by constructive force in the form of fear, fright, or coercion." *Id.* (cleaned up). "Although the term 'by force' is not defined in the relevant statutory scheme," the term "physical force" has been determined to "mean[ ] force applied to the body." *Id.* (citation omitted). The element is present "if the defendant uses force sufficient to overcome any resistance the victim might make[.]" *Id.* at 624, 887 S.E.2d at 864 (citation omitted). Of particular relevance to the present case is the Supreme Court's conclusion that "common sense dictates that . . . one cannot engage in nonconsensual sexual contact with another person without the application of some 'force,' however slight." *Id.* at 625, 887 S.E.2d at 864 (citations omitted). Because the identical phrase "by force and against the will of the other person" is used in both statutes, we apply the Supreme Court's well-reasoned analysis regarding the use of force in sexual battery cases to the second-degree forcible rape petition as well.

In the case at bar, David maintains that "the State failed to elicit any evidence of the use of force during Claire's testimony" and notes that, on cross-examination, "Claire explicitly disavowed that David used any force, denying that she was held,

threatened with violence, or hit." While in response to defense counsel's inquiry, "did [David] hold you—did he grab your hands or—or force you with his hands at all[,]" Claire did respond, "No, sir," our review of the entire transcript of her testimony reveals the following. Claire testified that she told David, "No," that she told him to stop, that she did not give him permission, and that she tried to leave the room. Claire confirmed on cross-examination that she remembered trying "to walk away" and "[l]eave the room"; furthermore, when she refused to remove her clothing, David removed them from her himself. Defense counsel asked, "and so what happened when you tried to step away from him?" Claire responded that David "just made [her] come in closer." She also confirmed on cross examination that David "grab[bed]" her and would "not let [her] go[.]" In evaluating sufficiency, such "conflicts in the evidence are resolved in favor of the State[.]" *T.T.E.*, 372 N.C. at 420, 831 S.E.2d at 298 (citation omitted).

This evidence shows the use of force, however slight, to "compel [Claire's] submission to the sexual acts[,]" *State v. Etheridge*, 319 N.C. 34, 45, 352 S.E.2d 673, 680 (1987), and to "overcome any resistance[,]" *J.U.*, 384 N.C. at 624, 887 S.E.2d at 864 (citation omitted). It is therefore sufficient to clear the low bar of a motion to dismiss and to submit the matter to the finder of fact. *See Taylor*, 379 N.C. at 611, 866 S.E.2d at 757.

Therefore, even had David's counsel renewed the motion to dismiss the second-degree forcible rape and sexual battery petitions at the close of all evidence, the

district court would have properly denied it. *See State v. Canty*, 224 N.C. App. 514, 517, 736 S.E.2d 532, 535 (2012), *disc. review denied*, 366 N.C. 578, 739 S.E.2d 850 (2013); *see also In re Clapp*, 137 N.C. App. 14, 24, 526 S.E.2d 689, 696 (2000) ("Thus, even assuming *arguendo* that the juvenile's attorney should have moved to dismiss the petition for insufficient evidence of force, we conclude that this omission did not prejudice the juvenile's defense since sufficient evidence of force was presented during the hearing."). Accordingly, David cannot show prejudice in his counsel's performance on this point, and we overrule David's alternative claim of ineffective assistance of counsel.

### *Exclusion of Testimony*

Finally, David argues that because "the State's case rested squarely on Claire's version of events, the [district] court erred by excluding testimony from [her] grandparents about prior instances of Claire conflating fictional television portrayals with her real life." Specifically, David contends that the district court erred in excluding the grandparents' testimony because the evidence "was [for] a permissible purpose . . . under Rule 404(b)." According to David, "[i]f the [district] court had heard that Claire's grandparents . . . generally believed her to be untruthful and believed she had difficulty distinguishing between reality and fiction, the court probably would have recognized . . . her story was untrue[.]" We disagree.

Although both Rule 404(b) and Rule 608(b) of the North Carolina Rules of Evidence "concern the use of specific instances of a person's conduct, the two rules

have very different purposes and are intended to govern entirely different uses of extrinsic conduct evidence." *State v. Morgan*, 315 N.C. 626, 633, 340 S.E.2d 84, 89 (1986).

Rule 608(b) "provides that specific instances of a witness'[s] conduct may, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning [her] character for truthfulness or untruthfulness." *State v. Lewis*, 365 N.C. 488, 494–95, 724 S.E.2d 492, 497 (2012) (cleaned up). Rule 608(b) states:

> (b) Specific instances of conduct. — Specific instances of the conduct of a witness, for the purpose of attacking or supporting [her] credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning [her] character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

N.C. Gen. Stat. § 8C-1, Rule 608(b).

Under this rule, "[t]he focus . . . is upon whether the conduct sought to be inquired into is of the type which is indicative of the actor's character for truthfulness or untruthfulness." *Morgan*, 315 N.C. at 634–35, 340 S.E.2d at 90. Finally, if evidence is admissible under Rule 608(b), then the adjudication judge "must determine, in his discretion, pursuant to Rule 403, that the probative value of the evidence is not outweighed by the risk of unfair prejudice, confusion of issues, or misleading the jury,

and that the questioning will not harass or unduly embarrass the witness." *Id.* at 634, 340 S.E.2d at 90.

After the State rested its case, David presented the grandparents as witnesses on his behalf. David's counsel first examined the grandmother regarding Claire's understanding of reality:

> Q. Does [Claire] sometimes have difficulty differentiating between what's happening on television and what's real?
>
> A. Yes.
>
> Q. And can you give an example—
>
> [THE STATE]: Objection. . . . [T]ruthfulness of a witness and talking about specific instances of conduct . . . . [is] only allowed on cross-examination. . . .
>
> . . . .
>
> THE COURT: Overruled at this point, but I'll be glad to revisit that with other questions.
>
> . . . .
>
> Go ahead, [defense counsel].
>
> Q. My next question [is] can you give an example of that?
>
> A. There was times when she'd be watching different shows . . . or be watching any shows . . . , she had problems understanding or comprehending that these were actors portraying somebody that this wasn't, like, a livestream of somebody's life. She had hard times understanding that these people were going off a script, and they were acting because she'd see them perhaps on another show, and she'd be like, well, how come, for example, Emmie Fleming is [in] that show? Won't the people on that show get mad at her

because she's over there? She couldn't comprehend that these were actors portraying people on situation shows.

Q. Was there ever a time where after seeing a show or a movie that she would claim something similar was experienced by her?

A. She—

[THE STATE]: Objection.

THE COURT: Sustained.

The grandfather attempted to testify similarly:

Q. Okay. And the night before [Claire reported the allegation to school personnel], what were you doing that night?

A. Watching T.V. with [Claire]. We usually sit down and watch Heartland together and then Baywatch and different shows.

Q. And is there something specifically you remember about watching television that night?

A. Yeah. Baywatch had . . . a show where the lifeguards were performing different stunts and stuff and then, they found out that one of their lifeguards was actually a predator that had molested a younger child the night before. And she had seen that and she was asking questions about it, and I told her it was wrong, you don't do that . . . .

. . . .

Q. And then, it was the very next day that [Claire]—

A. Yes, sir.

Q. —said that that happened?

A. Yes, sir.

Q. Is that the first time something like that had happened?

A. No.

[THE STATE]: Objection.

THE COURT: Sustained.

[THE STATE]: Also motion to strike.

THE COURT: Court will consider the witness'[s] statement.

. . . .

Q. Has [Claire] ever said that she was pregnant—

A. Yes, she has.

Q. —or thought she was pregnant prior to that—

A. Yes, sir.

Q. When was that?

[THE STATE]: Objection. . . .

THE COURT: Sustained.

[DEFENSE COUNSEL]: Judge, I would just argue that it is relevant and that it shows a pattern of behavior by [Claire] and is not character evidence as it's showing . . . . what she did in kind of a sequential kind of patterned behavior.

. . . .

[THE STATE]: Your Honor, it's talking about the

credibility of a witness and . . . attacking the credibility of the witness based on previous pattern of behavior . . . . And Rule 608 states that the credibility of a witness may be attacked or supported by evidence in the form of a reputation or opinion . . . .

. . . .

[S]pecific instance[s] of the conduct [are] only allowed on cross-examination with a few other exceptions that just don't apply in this situation . . . .

. . . .

THE COURT: All right. Objection sustained.

"It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness'[s] testimony would have been had [the witness] been permitted to testify." *State v. Applewhite*, 190 N.C. App. 132, 137, 660 S.E.2d 240, 244 (citation omitted), *review denied*, 362 N.C. 475, 666 S.E.2d 648 (2008). "Without a showing of what the excluded testimony would have been, we are unable to say that the exclusion was prejudicial." *Id.* at 138, 660 S.E.2d at 244 (cleaned up). Here, David failed to make an offer of proof demonstrating the substance of the grandparents' excluded testimony, thus hampering our review, and this argument is dismissed.

## **CONCLUSION**

We dismiss David's appeal as to his unpreserved argument regarding the trial court's denial of his motion to dismiss, deny his ineffective assistance of counsel claim,

and dismiss his argument regarding the district court's exclusion of testimony. The district court's adjudication and disposition orders are affirmed.

DISMISSED IN PART; AFFIRMED IN PART.

Judges COLLINS and FLOOD concur.