IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-259

No. COA21-228

Filed 19 April 2022

Surry County, No. 20 JB 68

IN THE MATTER OF: J.A.D., a minor juvenile.

Appeal by Respondent-Juvenile from orders entered 11 December 2020 by Judge Thomas B. Langan in Surry County District Court. Heard in the Court of Appeals 14 December 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Melissa K. Walker, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Katz, for the Respondent-Juvenile.*

GRIFFIN, Judge.

Respondent-juvenile J.A.D. ("Jeremy")[1] appeals from the trial court's orders adjudicating him delinquent for extortion of a classmate and entering a disposition of probation. Jeremy challenges his adjudication and disposition at each step of the proceedings, arguing (1) the State's failure to name the victim in his juvenile petition

---

[1] We use a pseudonym to protect the anonymity of the juvenile and for ease of reading. *See* N.C. R. App. P. 42(b).

was a fatal defect; (2) the evidence presented at the adjudication hearing did not show that his alleged threat was a "true threat" warranting punishment; (3) the evidence concerning his threat fatally varied from the language alleged in his juvenile petition; (4) the trial court failed to make sufficient written findings of fact in his adjudication order; and (5) the trial court failed to make sufficient written findings of fact in his disposition order. After review, we discern no error in Jeremy's adjudication, but remand each order for additional findings of fact.

## I.    Factual and Procedural Background

This is a case of an alleged extortion of favors from a middle school student by her classmate through the threat of revealing partially unclothed images to other students. The evidence at the adjudication hearing tended to show as follows:

Sometime in early 2020, Jeremy and three of his classmates were working on an assignment together and using their cell phones in their eighth-grade classroom. Cecilia[2], one of the three classmates, showed messages on her cell phone to the group. Either by permission or by grabbing the phone from Cecilia, Jeremy came into possession of Cecilia's cell phone. Jeremy then ran out of the classroom and into the bathroom for a short period of time. His teacher made him come back to the classroom, where he returned Cecilia's phone and was then sent to the principal's

---

[2] A pseudonym. *See* N.C. R. App. P. 42(b).

office.

On 26 February 2020, Cecilia reported to school administration that "a picture of [her] in underwear and a bra" was "being used by three eighth graders" to "obtain items from the cafeteria." Two of Jeremy's friends repeatedly used the picture to make Cecilia buy them cookies for approximately three to four months. Cecilia also reported that Jeremy "asked [her] to do his math homework." When she refused, Jeremy said he and his friends "would expose the picture of [her] to [her] face." Jeremy told her, "We always have that picture, you don't want that going around."

The School Resource Officer ("SRO") investigated Cecilia's report. Jeremy admitted to the SRO that he had taken Cecilia's phone, and the SRO confirmed that Cecilia had a picture of herself in underwear and a bra saved on her phone at that time. The SRO observed Jeremy and his friends using Snapchat on school computers and believed they had used the software to share the picture of Cecilia. Following his investigation, the SRO filed a juvenile petition against Jeremy for extortion on 12 May 2020.

The trial court continued the juvenile petition on 2 June 2020, and continued it once again on 31 July 2020. On 28 August 2020, the trial court denied a third motion to continue and dismissed the juvenile petition.

On 2 September 2020, a new, identical juvenile petition was filed once again alleging that Jeremy committed extortion. On 11 December 2020, the trial court held

an adjudicatory and dispositional hearing on the juvenile petition. The trial court adjudicated Jeremy delinquent on one count on extortion, entered a Level I disposition, and sentenced him to twelve months of probation. Jeremy timely appealed from the adjudication and disposition.

## II.     Analysis

¶ 8          Jeremy asserts the trial court erred through five arguments challenging subject matter jurisdiction, the sufficiency of the evidence presented at the adjudication hearing, and the sufficiency of the written findings of fact in each of the trial court's orders.

### A.  Fatal Defect in Petition

¶ 9          Jeremy argues that the "trial court lacked subject matter jurisdiction where the petition was fatally defective because it failed to name the victim" of his alleged crime of extortion. We review the jurisdictional validity of a charging instrument *de novo*. *See State v. Sturdivant*, 304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981).

¶ 10          "[A] petition in a juvenile action serves essentially the same function as an indictment in a felony prosecution and is subject to the same requirement that it aver every element of a criminal offense, with sufficient specificity that the accused is clearly apprised of the conduct for which he is being charged." *In re T.T.E.*, 372 N.C. 413, 419, 831 S.E.2d 293, 297 (2019) (citation omitted). "When a petition is fatally deficient, it is inoperative and fails to evoke the jurisdiction of the court." *In re J.F.M.*

*& T.J.B.*, 168 N.C. App. 143, 150, 607 S.E.2d 304, 309 (2005) (citation omitted). "[I]t is not the function of [a charging instrument] to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime." *Sturdivant*, 304 N.C. at 311, 283 S.E.2d at 731 (citation omitted).

¶ 11    "Because juvenile petitions are generally held to the standards of a criminal indictment, we consider the requirements of the indictments of the offenses at issue." *J.F.M.*, 168 N.C. App. at 150, 607 S.E.2d at 309 (citation omitted). Jeremy was adjudicated and held responsible for extortion under N.C. Gen. Stat. § 14-118.4 (2019). Section 14-118.4 states that

> Any person who threatens or communicates a threat or threats to another with the intention thereby wrongfully to obtain anything of value or any acquittance, advantage, or immunity is guilty of extortion and such person shall be punished as a Class F felon.

N.C. Gen. Stat. § 14-118.4. "'Extortion may be defined as wrongfully obtaining anything of value from another by threat, duress, or coercion.'" *State v. Privette*, 218 N.C. App. 459, 474, 721 S.E.2d 299, 310 (2012) (quoting *Harris v. NCNB Nat. Bank of N.C.*, 85 N.C. App. 669, 675, 355 S.E.2d 838, 843 (1987) (citing *Black's Law Dictionary* 696 (rev. 4th ed.1968))).

The juvenile petition alleging extortion in this case stated:

> [Jeremy] did unlawfully, willfully, and feloniously . . . threaten or communicate threat [sic] to another with the intent to obtain wrongfully anything of value, any acquittance, and advantage or any immunity.
> . . .
> [Jeremy] did obtain a digital image/picture of the victim without or [sic] knowledge or consent, the photo of the victim only wearing a bra and underwear was then used by [Jeremy] to obtain food from the school cafeteria, while threatening to expose the picture if the victim refused to buy or do what he asked.

The petition did not name Cecilia as the victim to whom Jeremy made his threat.

Jeremy argues the petition was fatally defective because it did not name Cecilia, and instead referred only to "another" and "the victim." Jeremy does not cite authority which states that a charging instrument for extortion must name the victim. Rather, Jeremy derives his argument from the rule for charging armed robbery set out in this Court's opinion in *State v. Oldroyd*, 271 N.C. App. 544, 843 S.E.2d 478 (2020), *rev'd*, 2022-NCSC-27. This Court's opinion in *Oldroyd* has been reversed and is no longer binding.

In *Oldroyd*, the defendant was convicted of attempted armed robbery under an indictment which alleged the defendant attempted to commit armed robbery against "the person and presence of employees of the Huddle House . . . whereby the li[ves] of the Huddle House employees w[ere] threatened and endangered." *Id.* at 548–49, 843 S.E.2d at 481. This Court vacated the defendant's conviction, holding that the

general naming of the victims as "Huddle House employees" was insufficient to give the trial court jurisdiction because the defendant's "indictment for attempted armed robbery must have named a victim to be valid." *Id.* at 551–52, 843 S.E.2d at 483.

The North Carolina Supreme Court reversed this Court's decision in *Oldroyd*, holding the indictment was "a plain and concise factual statement which conveyed the exactitude necessary to place [the defendant] on notice of the event or transaction against which he was expected to defend, to protect [him] from being placed in jeopardy twice for the same crime, and to guide the trial court in entering the correct judgment." *State v. Oldroyd*, ___ N.C. ___, 2022-NCSC-27, ¶ 13; N.C. Gen. Stat. § 924(a)(5) (2019). The Supreme Court held that the defendant's indictment plainly and concisely "asserted facts supporting every element of the criminal offense . . . , without allegations of an evidentiary nature, but with the sufficient precision which is statutorily required to inform [the] defendant of his alleged conduct. . . ." *Id.* ¶ 9. In reaching its conclusion, the Supreme Court placed emphasis on modern, less strict criminal pleading requirements set forth in the Criminal Procedure Act of 1975, which affected a "relaxation of the erstwhile common law criminal pleadings" and "signaled a shift 'away from the technical rules of pleading.'" *Id.* ¶ 10 (citation omitted).

It is important that the indictment in *Oldroyd* did name the victims with *some* specificity, i.e., the "employees of the Huddle House." In this case, Jeremy's petition

named the victim by referring to Cecilia only as "the victim" and "another."

¶ 17 Having acknowledged that the rule set forth by Jeremy has been overruled, and keeping modern pleading requirements in mind, we are left with the following question: what is the appropriate rule governing whether a victim must be named in a charging instrument for extortion? Neither party cites in their brief on appeal to any North Carolina precedent which dictates whether a charging instrument for extortion requires the victim to be named, much less to what degree of specificity the victim should be named. Our review has also revealed no such precedent. We return to our Courts' armed robbery jurisprudence, as we find a comparison of armed robbery and extortion helpful in our analysis.

¶ 18 With respect to armed robbery, the North Carolina Supreme Court has repeatedly held

> *it is not necessary that ownership of the property be laid in a particular person* in order to allege and prove armed robbery. The gist of the offense of robbery is the taking by force or putting in fear. An indictment for robbery will not fail if the description of the property is sufficient to show it to be the subject of robbery and negates the idea that the accused was taking his own property.

*State v. Spillars*, 280 N.C. 341, 345, 185 S.E.2d 881, 884 (1972) (emphasis added) (citing *State v. Rogers*, 273 N.C. 208, 212, 159 S.E.2d 525, 528 (1968)*; State v. Guffey*, 265 N.C. 331, 333, 144 S.E.2d 14, 16 (1965); *State v. Sawyer*, 224 N.C. 61, 66, 29 S.E.2d 34, 37 (1944)); *see Oldroyd*, 271 N.C. App. at 553, 843 S.E.2d at 483–84

(Bryant, J., dissenting). The longstanding rule in North Carolina is that the language in the charging instrument for armed robbery must show only that the defendant used a dangerous weapon to take personal property *from someone other than himself*. *See State v. Jackson*, 306 N.C. 642, 650–51, 295 S.E.2d 383, 388 (1982); *State v. Ballard*, 280 N.C. 479, 485, 186 S.E.2d 372, 375 (1972).

¶ 19        Armed robbery and extortion are similar offenses which both criminalize the taking of property from another through threat of harm. *See, generally, United States v. Harris,* 916 F.3d 948, 955 (11th Cir. 2019) ("Extortion is 'closely related to the crime of robbery, having in fact been created in order to plug a loophole in the robbery law by covering sundry threats which will not do for robbery.'" (quoting Wayne R. LaFave, *Criminal Law* § 20.4, 1335–36 (6th ed. 2017))); *State v. Matthews*, 274 N.C. App. 357, 850 S.E.2d 357, 2020 WL 6736823, at *6 (2020) (unpublished) ("Both attempted armed robbery with a dangerous weapon and extortion require a use of threat to deprive another of personal property or to obtain something of value from the victim."), *review denied*, 376 N.C. 902, 855 S.E.2d 278 (2021). "The gist of the offense of robbery is the taking by force or putting in fear." *Spillars*, 280 N.C. at 345, 185 S.E.2d at 884. The "gist" of extortion is also similarly the taking of something of value from the victim through the fear and apprehension of a threatened undesirable outcome.

¶ 20        However, as it pertains to how specifically a victim must be named, extortion

is materially distinguishable from armed robbery.

The crime of extortion could apply to "property" beyond items of personal property subject to robbery. It is clear from the statutory language that extortion applies where the defendant seeks to obtain "anything of value or any acquittance, advantage, or immunity." N.C. Gen. Stat. § 14-118.4. "While an indictment for [armed robbery] need not allege actual legal ownership of property, the indictment must at least name a person who was in charge or in the presence of the property at the time of the robbery." *State v. Burroughs*, 147 N.C. App. 693, 696, 556 S.E.2d 339, 342 (2001). This requirement cannot be practically applied to all cases of extortion. The other properties enumerated in N.C. Gen. Stat. § 14-118.4 are not necessarily owned, possessed, or otherwise in the charge or presence of an extortion victim forced to provide them. *See State v. Wright*, 240 N.C. App. 270, 273, 770 S.E.2d 757, 759 (2015).[3]

---

[3] In an effort to describe why extortion cannot be a lesser-included offense of armed robbery, our Court has explained:

> [T]he subject matter of the threat is much broader for the crime of extortion. Specifically, where armed robbery requires that the subject matter be personal property which is taken and carried away, extortion permits obtaining "anything of value or any acquittance, advantage, or immunity." A thing "of value or acquittance, advantage, or immunity" could involve coercing someone not to file a civil suit or to go to the police rather than coercing someone to hand over an item of personal property.

*Wright*, 240 N.C. App. at 273, 770 S.E.2d at 759 (internal citation omitted).

¶ 22 Further, the naming requirement found in our courts' armed robbery precedent stems from the notion that the specific identity of the victim is immaterial so long as it is clear that the defendant was not taking his own property. *State v. Pratt*, 306 N.C. 673, 681, 295 S.E.2d 462, 467 (1982) ("As long as it can be shown [the] defendant was not taking his own property, ownership need not be laid in a particular person to allege and prove robbery." (citation omitted)). Indeed, North Carolina acknowledges a "claim of right" defense to the crime of armed robbery, which states that "[a] defendant is not guilty of robbery if he forcibly takes personal property from the actual possession of another under a bona fide claim of right or title to the property[.]" *State v. Spratt*, 265 N.C. 524, 526, 144 S.E.2d 569, 571 (1965); *State v. Cox*, 375 N.C. 165, 172, 846 S.E.2d 482, 487 (2020) (reaffirming in North Carolina "the right of a party to engage in 'self-help' and to forcibly take personal property from the actual possession of another under a bona fide claim or right to the property"). Our precedent shows, therefore, that the requirement that a victim be named with any specificity at all stems not from a material consideration of the victim's identity, but from a need to affirmatively prove that the defendant acted with the requisite felonious intent to take another's property, not to take his own. *See Spratt*, 265 N.C. at 526, 144 S.E.2d at 571; *State v. Lawrence*, 262 N.C. 162, 168, 136 S.E.2d 595, 599–600 (1964); *State v. Chase*, 231 N.C. 589, 590, 58 S.E.2d 364, 365 (1950).

¶ 23   Extortion does not share armed robbery's focus on the ownership of the valuable property the defendant obtains or seeks to obtain. "North Carolina does not recognize a 'claim of right' defense in extortion-related cases." *Privette*, 218 N.C. App. at 477, 721 S.E.2d at 312. Rather, what matters is the wrongfulness of the method by which the defendant seeks to obtain something of value. *State v. Greenspan*, 92 N.C. App. 563, 568, 374 S.E.2d 884, 887 (1989) ("The wrongful intent required by the statute refers to the obtaining of property and not to the threat itself."). The gravamen of extortion is that the defendant sought to "attain property or some other acquittance, advantage, or immunity *in an unlawful and unjust manner*." *Privette*, 218 N.C. App. at 476, 721 S.E.2d at 312 (emphasis added).

¶ 24   We reject Jeremy's broader contention that the rules dictating what information must be included in a charging instrument for armed robbery may be extended to charging instruments for extortion. The essential elements of extortion do not place the same weight on the identity of the victim that is inherent in the essential elements of armed robbery. We cannot say that modern criminal pleading requirements dictate a need to allege the identity of the victim in order to plead "[a] plain and concise factual statement . . . which, without allegations of an evidentiary nature, asserts facts supporting every element" of extortion "with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5). We hold that a charging instrument

charging extortion need only apprise the charged party of the material elements of the offense of extortion: (1) that a wrongful demand was made with (2) the intent to demand something of value.

In Jeremy's case, the juvenile petition sufficiently alleged each essential element of extortion: that Jeremy did "threaten or communicate [a] threat" with the intent to "obtain wrongfully anything of value. . . ." The petition further alleged that Jeremy used a "photo of the victim only wearing a bra and underwear" and "threaten[ed] to expose the picture if the victim refused to buy or do what he asked." The petition clearly apprised Jeremy of the conduct for which he was being charged with sufficient specificity to allow him to prepare an adequate defense. *In re T.T.E.*, 372 N.C. at 419, 831 S.E.2d at 297; N.C. Gen. Stat. § 15A-924(a)(5). The trial court had jurisdiction over Jeremy's extortion charge.

**B. Threat Element of Extortion**

Jeremy next argues the "trial court erred by denying Jeremy's motion to dismiss where . . . North Carolina's extortion statute requires a threat of unlawful physical violence and . . . Jeremy did not make any such threat." Jeremy contends that the crime of extortion in North Carolina is an "anti-threat" statute which punishes a defendant's free speech in opposition to the First Amendment of the U.S. Constitution.

The State contends Jeremy failed to preserve this constitutional argument for

this Court's review because he did not raise it during trial. *See State v. Garcia*, 358 N.C. 382, 410, 597 S.E.2d 724, 745 (2004) ("It is well settled that constitutional matters that are not 'raised and passed upon' at trial will not be reviewed for the first time on appeal." (citation omitted)). "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). "However, Rule 10 does not bind a party on appeal only to arguments identical to the ones offered in support of an objection at trial." *State v. McLymore*, ___ N.C. ___, 2022-NCSC-12, ¶ 17. "If a party's objection puts the trial court and opposing party on notice as to what action is being challenged and why the challenged action is thought to be erroneous—or if the what and the why are 'apparent from the context,'—the specificity requirement has been satisfied." *Id.* (citing N.C. R. App. P. 10(a)(1)).

¶ 28        During the adjudicatory hearing, Jeremy's counsel moved to dismiss at the close of the State's evidence because, in part, Jeremy's "alleged threat is not really a threat." At the close of all the evidence, Jeremy's counsel again moved to dismiss, arguing "[Cecilia] simply ignored a juvenile remark, which [Jeremy] denies making, a juvenile remark that was made and never acted upon the alleged threat. . . . [T]his isn't even a threat." Jeremy's counsel did not specifically refer to the First

Amendment as grounds for dismissal, but he did argue that the State failed to show that Jeremy made a punishable threat. It was "apparent from the context" of this argument that Jeremy's counsel questioned whether Jeremy's speech was punishable, and the trial court and the State should have been on notice that the case presented constitutional concerns. We hold that Jeremy preserved this issue for our review.

¶ 29        Jeremy asserts that "true threat" crimes require the State to show the defendant threatened "unlawful physical violence" as an essential element of the crime, and that the State was unable to show Jeremy made such a threat. We review the denial of a motion to dismiss for the State's failure to present substantial evidence of each essential element of the crime charged *de novo* to determine whether, in the light most favorable to the State, there was "'substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense.'" *State v. Tucker*, ___ N.C. ___, 2022-NCSC-15, ¶ 10 (citations omitted).

¶ 30        Absent the alleged infringement on free speech, Jeremy's argument fails to refute North Carolina extortion precedent. Restricting the crime of extortion to threats of physical violence would defeat the purpose of the crime. Agnostic of subsequent First Amendment jurisprudence, this Court has held that "[t]he definition of extortion in G.S. 14–118.4 covers *any* threat made with the intention to

wrongfully obtain 'anything of value or any acquittance, advantage, or immunity.'" *Greenspan*, 92 N.C. App. at 567, 374 S.E.2d at 886–87 (emphasis added) ("[Offer[ing] to refrain from pressing criminal charges in exchange for money amounted to threatening criminal prosecution and clearly comes within the purview of the broad language, 'a threat.'"). This Court has also incorporated the United States Court of Appeals for the Fourth Circuit's recognition that "economic harm"—not just physical violence—is a sufficient threatened result to constitute extortion as defined in N.C. Gen. Stat. § 14-118.4. *See id.* at 566, 374 S.E.2d at 886 (citing *Tryco Trucking Co. v. Belk Stores Servs., Inc.*, 634 F. Supp. 1327, 1334 (W.D.N.C. 1986)); *Tryco*, 634 F. Supp. at 1334 ("Fear of economic harm satisfies the definition that extortion is the obtaining of property from another with his consent induced by wrongful use of fear." (citation omitted)).

¶ 31        Nonetheless, Jeremy's argument asserts that current First Amendment jurisprudence imposes a different result. He contends that N.C. Gen. Stat. § 14-118.4 is an "anti-threat" statute criminalizing threatening speech, and that all anti-threat statutes may only criminalize speech which threatens unlawful physical violence. Jeremy's argument presents this Court with two questions. First, does the crime of extortion as defined in N.C. Gen. Stat. § 14-118.4 constitute an "anti-threat" statute subject to First Amendment "true threat" requirements? Second, if N.C. Gen. Stat. § 14-118.4 is an anti-threat statute, does the statute therefore only apply to threats of

unlawful physical violence? Assuming without deciding that N.C. Gen. Stat. § 14-118.4 is an anti-threat statute, we hold that First Amendment jurisprudence does not limit application of the statute to threats of unlawful physical violence.

¶ 32      In *State v. Taylor*, the North Carolina Supreme Court recognized that "true threats" are one indisputable category of constitutionally proscribable free speech that is not protected by the First Amendment. *State v. Taylor*, 379 N.C. 589, 2021-NCSC-164, ¶ 18. Using U.S. Supreme Court decisions to guide its analysis, the Court in *Taylor* recognized that determining whether a defendant's speech was a true threat required our courts to balance the State's interest in protecting individuals' safety with a speaker's substantial right to "engage in controversial but constitutionally permissible speech[.]" *Id.* ¶ 24. "[W]hether a defendant's particular statements contain a true threat" is a fact-specific evaluation, in which "a court must consider (1) the context in which the statement was made, (2) the nature of the language the defendant deployed, and (3) the reaction of the listeners upon hearing the statement, although no single factor is dispositive." *Id.* (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)). The Court further determined that, in order to narrowly define the range of unprotected speech proscribable as true threats, "the State is required to prove [the speaker's intent by] both an objective and a subjective element in order to convict [the] defendant" of a true threat offense. *Id.* ¶ 42.

¶ 33      Even if we assume that N.C. Gen. Stat. § 14-118.4 codifies the crime of

extortion as an anti-threat statute within the definition contemplated in *Taylor*, First Amendment "true threat" analysis does not require a threat to include "unlawful physical violence." Jeremy cites to the following language from the United States Supreme Court's decision in *Virginia v. Black* to support his contention that speech is only prosecutable as a true threat if it threatens unlawful physical violence:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

*Virginia v. Black*, 538 U.S. 343, 359–60 (2003) (internal citations and quotation marks omitted). We disagree with Jeremy's characterization of this passage.

¶ 34 As noted in *Taylor*, "[n]either [our Supreme] Court nor the Supreme Court of the United States has ever explicitly defined the scope of the true threats exception to the First Amendment." *Taylor*, 2021-NCSC-164, ¶ 19. Defendant's cited language from *Black* only explains that threats which threaten unlawful physical violence are included under the overall umbrella of "true threats." Indeed, in *Taylor*, our Supreme Court analyzed *Black's* description of intimidation as a threat "with the intent of

placing the victim in fear of bodily harm or death", but only to interpret whether the First Amendment required the State to prove the defendant's subjective intent. *Id.* ¶ 33 (citation omitted). The *Taylor* Court never entertained the notion that a threat of unlawful physical violence could be a required element, concluding only that "Black [held] that a speaker's subjective intent to threaten is the pivotal feature separating constitutionally protected speech from constitutionally proscribable true threats." *Id.* There is no federal or North Carolina state constitutional rule that threats are protected speech unless they threaten unlawful physical violence.

¶ 35        The State was under no burden to prove that Jeremy threatened unlawful physical violence. The trial court did not err in denying Jeremy's motion to dismiss.

## C. Fatal Variance in Evidence

¶ 36        Jeremy contends the "trial court erred by denying his motion to dismiss where there was a fatal variance between the 'threat' alleged in the petition and the proof at the hearing."

¶ 37        We review *de novo* to determine whether the State fulfilled its burden of presenting substantial evidence of each essential element of the crime charged. *Tucker*, 2022-NCSC-15, ¶ 10. "A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." *State v. Waddell*, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971). To prevail on a motion to dismiss for a fatal variance, "the defendant must show a

fatal variance between the offense charged and the proof as to '[t]he gist of the offense[,]'" a variance with respect to an essential element. *State v. Pickens*, 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997) (citations omitted).

¶ 38 Juvenile petitions alleging delinquency are charging instruments akin to criminal indictments. *T.T.E.*, 372 N.C. at 419, 831 S.E.2d at 297. "[T]his Court has acknowledged the general rule that [a charging instrument] using 'either literally or substantially' the language found in the statute defining the offense is facially valid", *State v. Williams*, 368 N.C. 620, 626, 781 S.E.2d 268, 272 (2016) (citation omitted), and charging instruments do not need to detail exact, specific events and evidence to distinctively plead the offense charged and avoid risks of double jeopardy. *See State v. Rambert*, 341 N.C. 173, 176, 459 S.E.2d 510, 512 (1995). "When an averment in an indictment is not necessary in charging the offense, it will be deemed to be surplusage." *Pickens*, 346 N.C. at 646, 488 S.E.2d at 172 (citations and internal quotation marks omitted).

¶ 39 The petition in this case averred, *inter alia*, that "the photo of the victim only wearing a bra and underwear was then used by [Jeremy] to obtain food from the school cafeteria, while threatening to expose the picture if the victim refused to buy or do what he asked." At trial, the State presented evidence which tended to show that Jeremy asked "[f]or [Cecilia] to do his homework", and that two of Jeremy's friends actually forced Cecilia to buy them cookies from the cafeteria. Jeremy asserts

that, "[a]s it stands now, a petition could be filed alleging that Jeremy asked Cecilia to do his math homework in exchange for not exposing the picture, thereby leaving him open to an adjudication for the same conduct." We disagree.

The essential element of extortion at issue regarding this evidence is that the defendant's wrongful threat was made for the purpose to "obtain anything of value or any acquittance, advantage, or immunity[.]" N.C. Gen. Stat. § 14-118.4. The exact, factual identification of the valuable property the defendant sought to obtain is immaterial so long as the State's proof ultimately shows that the defendant obtained or attempted to obtain something of value. *See supra* pgs. 10-13 (discussing materiality of identity of property to offense of extortion). In this case, the language in the indictment explaining that Jeremy sought to "obtain food from the school cafeteria" was unnecessarily specific, and therefore surplusage. *See Pickens*, 346 N.C. at 646, 488 S.E.2d at 172. Further, Jeremy was appropriately apprised of the offense for which he was being charged. Regardless of whether the request was specifically for cookies or answers to homework, the petition placed Jeremy on notice of the factual circumstances surrounding his alleged offense. The evidence presented during the adjudication hearing did not create a fatal variance from the language of Jeremy's juvenile petition.

**D. Written Findings Required by Section 7B-2411**

Defendant also argues the "trial court erred by failing to make sufficient

findings of fact required by [N.C. Gen. Stat. §] 7B-2411 in its written adjudication order." "An alleged violation of a statutory mandate is a question of law and reviewed *de novo*." *Matter of W.M.C.M.*, 277 N.C. App. 66, 2021-NCCOA-139, ¶ 29.

¶ 42 N.C. Gen. Stat. § 7B-2411 instructs:

> If the court finds that the allegations in the petition have been proved [beyond a reasonable doubt], the court shall so state in a written order of adjudication, which shall include, but not be limited to, the date of the offense, the misdemeanor or felony classification of the offense, and the date of adjudication.

N.C. Gen. Stat. § 7B-2411 (2019); *see* N.C. Gen. Stat. § 7B-2409 (2019) ("The allegations of a petition alleging the juvenile is delinquent shall be proved beyond a reasonable doubt."). "Section 7B-2411 does not require the trial court to delineate each element of an offense and state in writing the evidence which satisfies each element, and we recognize that section 7B-2411 does not specifically require that an adjudication order contain appropriate findings of fact." *In re J.V.J.*, 209 N.C. App. 737, 740, 707 S.E.2d 636, 638 (2011) (citations and internal quotation and editing marks omitted). "Nevertheless, at a minimum, section 7B-2411 requires a court to state in a written order that 'the allegations in the petition have been proved [beyond a reasonable doubt].'" *Id.* (citing N.C. Gen. Stat. § 7B-2411).

¶ 43 In *In re J.V.J.*, the trial court's adjudication order included only the following findings:

> Based on the evidence presented, the following facts have been proven beyond a reasonable doubt:
>
> The court finds that Joseph is responsible.
>
> 1391–ASSAULT GOVT OFFICAL/–14–33 (C)(4) CLASS 1A MISD OCCURRED 11–23–09.

*Id.* (internal editing marks omitted). The Court concluded that these findings were insufficient to satisfy N.C. Gen. Stat. § 7B-2411 and remanded for additional findings of fact. *Id.* at 741, 707 S.E.2d at 638.

¶ 44      Conversely, in *In re K.C.*, the trial court's adjudication order wrote out the juvenile's offense date, offense, felony or misdemeanor classification in a clear table, and was file-stamped with the date of adjudication. *In re K.C.*, 226 N.C. App. 452, 460–61, 742 S.E.2d 239, 245 (2013). The adjudication order then stated:

> The following facts have been proven beyond a reasonable doubt: . . .
>
> After hearing all testimony in this matter the court finds beyond a reasonable doubt that the juvenile committed the offense of Sexual Battery and Simple Assault and he is ADJUDICATED DELINQUENT.

*Id.* The Court concluded that the adjudication order "satisfie[d] the minimum requirements of section 7B-2411" because it "provide[d] the date of the offense, the fact that the assault [was] a class 2 misdemeanor, the date of the adjudication, and clearly state[d] that the court considered the evidence and adjudicated [the juvenile] delinquent as to the petition's allegation . . . beyond a reasonable doubt." *Id.* at 461,

742 S.E.2d at 245 (footnote omitted).

In the present case, the adjudication order included the date of Jeremy's offense, the offense, and the felony/misdemeanor classification of the offense in the following table:

| Offense Date | Offense (with statute number | Date Petition Filed | F/M | Class | Status |
|---|---|---|---|---|---|
| 11/01/2019 | EXTORTION – 14.118.4 | 09/02/2020 | F | Class A through I felony | X Delinq./Hearing |

The adjudication order then includes the following written finding of fact:

> The following facts have been proven beyond a reasonable doubt: . . .
>
> At the hearing before the judge, the juvenile was found to be responsible for extortion in violation of 14-118.4.

The State contends that the details of the adjudication order in this case are most similar to the order in *In re K.C.* We disagree, and find the order in this case is materially distinguishable from *In re K.C.* The adjudication orders in *In re J.V.J.*, *In re K.C.*, and the present case all share language pre-printed on the adjudication form: "The following facts have been proven beyond a reasonable doubt". The order in *In re K.C.* reiterates the burden of proof in the language written after the pre-printed prompt, making it clear that, based upon evidence in the hearing, the trial court found the juvenile responsible beyond a reasonable doubt. The adjudication orders in *In re J.V.J.* and the present case rely solely on the pre-printed form language to comply

with the requirements of section 7B-2411.

We hold that the findings of fact in the adjudication order in this case were insufficient to comply with section 7B-2411. Section 7B-2411 requires the trial court to affirmatively state the burden of proof in its written findings, without regard to the pre-printed language on the form it chooses to use. The language in this case appears more thorough, but effectively states nothing more than the order stated in *In re J.V.J.*: a conclusory note that the juvenile was responsible for the offense charged. "As such, we remand this case to the trial court to make the statutorily mandated findings in [Jeremy's] adjudication order." *In re J.V.J.*, 209 N.C. App. at 741, 707 S.E.2d at 638.

**E. Written Findings Required by Sections 7B-2512 and 7B-2501(c)**

Lastly, Defendant contends the "trial court erred by failing to make findings of fact to demonstrate that it considered each of the factors listed in [N.C. Gen. Stat. §] 7B-2501(c)."

In a juvenile delinquency action, "[t]he dispositional order shall be in writing and shall contain appropriate findings of fact and conclusions of law." N.C. Gen. Stat. § 7B-2512 (2019). Additionally, N.C. Gen. Stat. § 7B-2501(c) instructs that "the court shall select a disposition that is designed to protect the public and to meet the needs and best interests of the juvenile, based upon" five enumerated factors. N.C. Gen. Stat. § 7B-2501(c) (2019). "The plain language of Section 7B-2501(c) compels us to

find that a trial court must consider each of the five factors in crafting an appropriate disposition." *Matter of I.W.P.*, 259 N.C. App. 254, 261, 815 S.E.2d 696, 702 (2018).

¶ 50        In this case, the trial court indicated in its disposition order that it received, considered, and incorporated by reference Jeremy's predisposition report, risks assessment, and needs assessment, and that it was "required to order a Level 1 disposition." The trial court used a disposition form which reminded it to state additional findings showing compliance with the five factors listed in N.C. Gen. Stat. § 7B-2501(c), but the trial court did not make any findings addressing the factors. *See In re V.M.*, 211 N.C. App. 389, 392, 712 S.E.2d 213, 215–16 (2011) (finding insufficient findings of fact under N.C. Gen. Stat. § 7B-2501(c) and remanding for a new dispositional hearing, based upon identical factual circumstances). The record on appeal includes Jeremy's predisposition report, risks assessment, and needs assessment that were incorporated by reference into the trial court's written disposition order, but these documents also do not sufficiently address each of the N.C. Gen. Stat. § 7B-2501(c) factors. *See I.W.P.*, 259 N.C. App. at 264, 815 S.E.2d at 704.

¶ 51        "[W]e hold the trial court's written order contains insufficient findings to allow this Court to determine whether it properly considered all of the factors required by N.C.G.S. § 7B-2501(c)." *V.M.*, 211 N.C. App. at 392, 712 S.E.2d at 216. "Accordingly, the dispositional order is deficient, and we remand for further findings of fact to

address [each of the N.C. Gen. Stat. § 7B-2501(c) factors]." *I.W.P.*, 259 N.C. App. at 264, 815 S.E.2d at 704.

### III.   Conclusion

The petition in this case was not defective because North Carolina law does not require a charging instrument to name the specific identity of a victim to charge the crime of extortion. The trial court did not err by denying Jeremy's motion to dismiss because First Amendment jurisprudence did not require the State to show that Jeremy threatened unlawful physical violence, and because the evidence presented at trial did not fatally vary from evidence alleged in Jeremy's juvenile petition.

However, the trial court failed to include the burden of proof in its written adjudication order as required by N.C. Gen. Stat. § 7B-2411. We vacate and remand the trial court's adjudication order for additional findings of fact in compliance with section 7B-2411, if such findings are possible.

Because we vacate the adjudication order, we vacate the trial court's subsequent disposition order. Independent grounds also exist to warrant vacating and remanding the disposition order. Additionally, the trial court failed to make sufficient findings of fact showing that it considered each of the five factors listed in N.C. Gen. Stat. § 7B-2501(c). The trial court is permitted on remand to hold a new dispositional hearing to hear additional evidence as needed to appropriately consider

the five N.C. Gen. Stat. § 7B-2501(c) factors.

NO ERROR IN PART, VACATED AND REMANDED IN PART.

Judges ZACHARY and WOOD concur.