IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-473

Filed 7 May 2024

Yadkin County, No. 19 JB 13

IN THE MATTER OF: D.R.F., JR.

Appeal by Juvenile from Orders entered 28 November 2022 by Judge David V. Byrd in Yadkin County District Court. Heard in the Court of Appeals 31 October 2023.

*Attorney General Joshua H. Stein, by Deputy Solicitor General Lindsay Vance Smith, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender John F. Carella, for Juvenile-Appellant.*

HAMPSON, Judge.

Juvenile D.R.F., Jr. (Daniel[1]) appeals from a Juvenile Adjudication Order finding he committed the offense of Communicating a Threat to Commit Mass Violence on Educational Property and adjudicating him as a delinquent juvenile and a Juvenile Level 2 Disposition Order placing him on 12 months of probation and committing him in secure custody for seven days. The Record before us tends to

---

[1] A pseudonym for the Juvenile stipulated to by the parties.

reflect the following:

On 26 May 2022—after two prior Juvenile Petitions in the case alleging similar facts had previously been filed and dismissed in the case—a Deputy with the Yadkin County Sheriff's Office filed a verified Juvenile Petition. The Petition alleged Daniel had threatened to commit an act of mass violence on educational property in violation of N.C. Gen. Stat. § 14-277.6. The Petition was heard by the trial court on 2 June 2022.

At the outset of this hearing, the trial court, with consent of the parties, conducted a consolidated first appearance, probable cause, and adjudication hearing. The parties agreed the trial court could record and consider the evidence presented in support of the State's showing of probable cause as the State's evidence for adjudication. At this hearing, the State presented testimony from three other students: Samantha, Jillian, and Gerald.[2]

Samantha, Jillian, and Gerald each testified that they were in a chorus class with Daniel at a local high school during the spring semester of 2022. Samantha testified there were approximately 15 to 17 students in the class. On 6 January 2022, the students were gathered near the exit of the auditorium after the chorus class waiting to go to lunch. Samantha saw Daniel talking with a group of other students. She heard Daniel say "that he was going to shoot up the school." Samantha could not

---

[2] Pseudonyms employed by the parties.

identify any of the other students. Samantha testified the statement made her feel "[f]rightened like I was really scared." She reported Daniel's statement to the School Resource Officer.

Jillian testified she "heard someone say, 'I will bring the guns.'" Jillian further testified Samantha told her she heard Daniel "say that he was going to shoot up the school[.]" Jillian "was scared because I don't want to be in the next school to get shot up." She made a report to the School Resource Officer after lunch.

Gerald testified he heard Daniel state: "that they was going to shoot up the school." Like Samantha, he did not know the other students. He testified that hearing the statement made him feel "sick to my stomach[,]" meaning scared. Over Daniel's objection, Gerald testified about a separate incident with Daniel where Daniel had threatened Gerald by text message and told Gerald he was going to make a "diss track." Gerald further testified Daniel then made "a video about blowing my brains out and others." This was why Gerald's sense of fear was heightened when he heard Daniel's comment. Gerald described Daniel's tone of voice as "serious." Gerald did not see anyone's reaction to the statement but did not hear anyone laugh.

Following this testimony, the trial court found there was probable cause to proceed to adjudication. Daniel, through counsel, denied the allegations in the Petition. The State rested on the evidence presented through the testimony of Samantha, Jillian, and Gerald.

At the close of the State's evidence, Daniel, through counsel, moved to dismiss the Petition for insufficient evidence. The trial court denied the motion and the parties presented arguments. Daniel's trial counsel argued there was insufficient evidence Daniel communicated a threat to commit mass violence on educational property. Daniel's trial counsel also argued there was no evidence Daniel's statement constituted a true threat and, as such, was protected speech under the First Amendment to the United States Constitution.

Following trial counsel's argument, the trial court rendered its adjudication finding beyond a reasonable doubt Daniel had committed the offense of Communicating a Threat to Commit Mass Violence on Educational Property. The State requested the trial court continue disposition for seven days while Daniel was held in secure custody. Daniel's trial counsel objected to Daniel being held in secure custody. The trial court continued disposition and required Daniel to be held in secure custody for seven days pending disposition.

The disposition hearing was held on 9 June 2022. The trial court orally ordered Daniel placed on juvenile probation for 12 months. The trial court further ordered Daniel to intermittent detention of an additional seven days suspended upon Daniel's completion of 50 hours of community work. The trial court also noted Daniel's oral Notice of Appeal.

On 28 November 2022, the trial court entered its written Juvenile Adjudication Order and Juvenile Level 2 Disposition Order. In the written Juvenile Adjudication Order, the trial court found:

> The juvenile made a "true threat" to shoot up the school. Each student witness who heard the juvenile's threat testified that they took the threat seriously. One witness testified that it made him "sick to his stomach" with fear. Although one witness did not believe that the threat would be carried out immediately, she believed that it would be carried out. The Court finds that a reasonable hearer would objectively construe the statement as an actual threat causing fear. The Court further finds the juvenile subjectively intended the statement to be construed as a threat. Indeed, another student told the juvenile that he "would bring the gun." There is no evidence that there was any laughter or joking at the time that the threat was made. Further, the juvenile's prior making of a video threatening a fellow student tends to show his intent that the statement be construed as a threat.

The trial court's Adjudication Order also noted the continuance of disposition and placement of Daniel in secure custody for seven days pending disposition. The trial court's Juvenile Level 2 Disposition Order was entered consistent with its prior orally-rendered ruling. Daniel timely filed written Notice of Appeal from both the Juvenile Adjudication Order and the Juvenile Level 2 Disposition Order on 8 December 2022.

## Issues

The issues on appeal are whether: (I) there was sufficient evidence Daniel's statement that he was going to shoot up the school constituted a true threat to survive dismissal on constitutional grounds; (II) there was sufficient evidence Daniel

committed the offense of Communicating a Threat of Mass Violence on Educational Property to survive a motion to dismiss; and (III) the trial court abused its discretion by continuing disposition and placing Daniel in secure custody pending disposition.

## Analysis

I.      True Threat

Daniel first argues the trial court's failure to dismiss the Petition and its adjudication of him as delinquent based on his statement he was going to shoot up the school constitutes a violation of his First Amendment right of free speech. Specifically, Daniel argues there was insufficient evidence his statement was objectively threatening to his listeners or that he had the subjective intent to threaten violence. As such, Daniel contends the State presented insufficient evidence his statement constituted a true threat. He asserts, then, the State failed to establish his statement was not protected speech under the First Amendment.

" 'The standard of review for alleged violations of constitutional rights is de novo.' " *State v. Shackelford*, 264 N.C. App. 542, 551, 825 S.E.2d 689, 695 (2019) (quoting *State v. Roberts*, 237 N.C. App. 551, 556, 767 S.E.2d 543, 548 (2014)). "Under the de novo standard, this Court 'considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.' " *Id.* (quoting *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008)). " '[I]n cases raising First Amendment issues ... an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a

forbidden intrusion on the field of free expression.' " *State v. Taylor*, 379 N.C. 589, 608, 866 S.E.2d 740, 755 (2021) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499, 104 S. Ct. 1949, 1958, 80 L. Ed. 2d 502 (1984)). "Independent whole record review does not empower an appellate court to ignore a trial court's factual determinations. In this regard, an appellate court is not entitled to 'make its own findings of fact and credibility determinations, or overrule those of the trier of fact.' " *Id.* (quoting *Desmond v. News and Observer Publ'g Co.*, 375 N.C. 21, 44, n.16, 846 S.E.2d 647, 662 (2020)).

"Under the First Amendment, the State may not punish an individual for speaking based upon the contents of the message communicated." *Id.* at 605, 866 S.E.2d at 753. Our Supreme Court "recognizes that there are limited exceptions to this principle, as the State is permitted to criminalize certain categories of expression which, by their very nature, lack constitutional value." *Id.* One such limited exception is when the criminalized speech constitutes a "true threat." *See id.* at 598-599, 866 S.E.2d at 748.

The United States Supreme Court appears to have first applied the term "true threat" in its per curiam opinion in *Watts v. United States*, 394 U.S. 705, 708, 89 S. Ct. 1399, 1401, 22 L. Ed. 2d 664 (1969). It later explained: " 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 1548, 155 L. Ed.

2d 535 (2003) (citations omitted). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.' " *Id.* at 359-60, 123 S. Ct. 1536, 1548, 115 L. Ed. 2d 535 (citations omitted).

Here, the Petition alleged Daniel had communicated a threat of mass violence on educational property in violation of N.C. Gen. Stat. § 14-277.6. This Court has specifically recognized the true threat analysis is applicable to this anti-threat statute to guard against the use of Section 14-277.6 to infringe upon First Amendment rights. *In re Z.P.*, 280 N.C. App. 442, 445, 868 S.E.2d 317, 319 (2021). We observed: "The United States Supreme Court has concluded that an anti-threat statute requires the government to prove a 'true threat.' " *Id.* (citing *Watts,* 394 U.S. at 708, 89 S.Ct. at 1401. We further noted: "That Court has explained that a true threat, for purposes of criminal liability, depends on both how a reasonable hearer would objectively construe the statement and how the perpetrator subjectively intended her statement to be construed." *Id.* (citing *Elonis v. United States*, 575 U.S. 723, 737-38, 135 S.Ct. 2001, 2010, 192 L. Ed. 2d 1 (2015)).

Our Supreme Court defines "a true threat as an objectively threatening statement communicated by a party which possesses the subjective intent to threaten a listener or identifiable group." *Taylor*, 379 N.C. at 605, 866 S.E.2d at 753. "[I]n order to determine whether a defendant's particular statements contain a true threat,

a court must consider (1) the context in which the statement was made, (2) the nature of the language the defendant deployed, and (3) the reaction of the listeners upon hearing the statement, although no single factor is dispositive." *Id*. at 600-01, 866 S.E.2d at 750.

More recently, in *Counterman v. Colorado*, the United States Supreme Court has expounded further on the true threats analysis. The Court again acknowledged: "True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69, 143 S. Ct. 2106, 2111, 216 L. Ed. 2d 775 (2023). The Court first held under a true threats analysis, the First Amendment "requires proof that the defendant had some subjective understanding of the threatening nature of his statements." *Id*. Second, it held that "a mental state of recklessness is sufficient." *Id*. As such, "[t]he State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id*. at 69, 143 S. Ct. at 2111-12.

In this case, Daniel argues the State failed to present any evidence of the context in which Daniel made the alleged threat. Daniel contends the State was required to prove the exact contents of the alleged threat, the context in which Daniel was speaking, and identify or call as witnesses the students to whom Daniel was directly speaking. Daniel asserts the trial court could thus only speculate as to whether the alleged threat constituted a true threat.

In *In re Z.P.*, this Court analyzed whether a student's alleged threat "to blow up the school" objectively constituted a true threat for purposes of a delinquency petition alleging a threat of mass violence on educational property. *Z.P.*, 280 N.C. App. at 446, 868 S.E.2d at 319. This Court summarized the evidence in that case:

> Three of Sophie's classmates (Madison, Tyler, and Caleb) each testified to hearing Sophie threaten to blow up the school, though none of them testified that they thought she was serious when she made the threat.
>
> Madison testified that Sophie talked about bombing the school. Madison testified that she did not think Sophie was serious when making the statement, and Madison did not report the threat to any adult.
>
> Tyler testified that Sophie "said something about a bomb" and said "she was going to blow up the school." Tyler offered in a joking manner to help her build the bomb and stated that he "thought it was just a joke."
>
> Caleb also heard Sophie's threat about blowing up the school but was equivocal about his perception of Sophie's seriousness, stating that her statement was "either [ ] a joke or it could be serious."

*Id.*

Ultimately, this Court concluded the evidence there did not rise to sufficient objective evidence of a true threat. Instead, we determined:

> The State's evidence may create a suspicion that it would be objectively reasonable for Sophie's classmates to think Sophie was serious in making her threat. But we do not believe that the evidence is enough to create an inference to satisfy the State's burden. Indeed, none of Sophie's classmates who heard her statement believed that Sophie was serious, with most of them convinced that she was joking. She had made outlandish threats

- 10 -

before, never carrying out any of them.

*Id.* at 446, 868 S.E.2d at 319-20.

While the facts of *Z.P.* are somewhat similar to those in this case, they differ in key aspects. Indeed, the State's evidence did provide evidence of the context in which Daniel's alleged threat was made. The evidence showed a group of students was gathered waiting to leave their chorus class to go to lunch when Daniel made the statement that he was "going to shoot up the school." Two student-bystanders—Samantha and Gerald—testified consistent with each other that they heard the statement. Samantha was scared enough to report the threat right away. Gerald testified it made him sick to his stomach. He further testified Daniel's tone sounded serious. Although Gerald did not see any reaction from other students, he did not hear any laughter. Indeed, to the contrary, a third bystander—Jillian—who did not hear Daniel's statement, testified she heard another student respond that they would "bring the guns." When she told Samantha about that statement and learned of Daniel's, she too was scared.

Unlike the student-witnesses in *Z.P.*, who all heard the alleged threat to blow up the school and believed it to be a joke or were at least equivocal, the student-witnesses in this case did not testify they thought Daniel was joking or that his statement might have been perceived as a joke. To the contrary, the evidence was that Daniel sounded serious. The evidence further demonstrated Daniel's comment elicited the further comment from a student offering to "bring the guns," which was

overheard by the third student-witness and, itself, caused her alarm. Applying the factors set out in *Taylor*, the evidence tended to reflect that, in the context of a school setting, Daniel threatened to conduct a school shooting in a serious tone and students overhearing the threat took it seriously and were scared. *See Taylor*, 379 N.C. at 600-01, 866 S.E.2d at 750. The response to Daniel's statement was not laughter but another student's offer to bring the guns. Thus, there was evidence that Daniel's statement was objectively threatening. *See id.*

Moreover, there was evidence Daniel had "some subjective understanding of the threatening nature of his statements." *Counterman*, 600 U.S. at 69, 143 S. Ct. at 2111. The evidence showed Daniel directed his statement that he was going to shoot up the school while in a group of 15 to 17 other students during school hours. The statement was able to be overheard by Samantha and Gerald and made in a serious tone. Gerald also testified to a prior incident in which Daniel directed threats toward him, including a video of Daniel blowing Gerald's brains out. At a minimum, this evidence meets the *Counterman* standard of a conscious disregard by Daniel of a substantial risk that his communications would be viewed as threatening violence.[3] *Id.*

---

[3] *Counterman* was decided after Daniel's appellate counsel filed their Appellant's Brief in this Court. In Reply Briefing, Daniel's appellate counsel provides a thoughtful discussion of *Counterman* and its impact on this case. However, appellate counsel does not dispute the applicability of the *Counterman* standard to this case.

Thus, there was sufficient evidence of a true threat presented by the State in this case. Therefore, the trial court's proceeding on the Petition was not an infringement of Daniel's First Amendment rights. Consequently, the trial court did not err by denying Daniel's Motion to Dismiss the Petition on this basis.

## II.    Sufficiency of the Evidence

Daniel makes a separate argument that the State failed to present sufficient evidence he directed a threat at any specific person or persons. Thus, Daniel contends the trial court erred in failing to dismiss the Petition for insufficiency of the evidence to meet the elements of Communicating a Threat to Commit Mass Violence on Educational Property. We disagree.

> This Court reviews de novo a trial court's denial of a motion to dismiss for insufficiency of the evidence to determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *In re T.T.E.*, 372 N.C. 413, 420, 831 S.E.2d 293 (2019) (quoting *State v. Turnage*, 362 N.C. 491, 493, 666 S.E.2d 753 (2008)). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *State v. Hunt*, 365 N.C. 432, 436, 722 S.E.2d 484 (2012) (quoting *State v. Abshire*, 363 N.C. 322, 327–328, 677 S.E.2d 444 (2009)). All evidence is viewed "in the light most favorable to the State and the State receives the benefit of every reasonable inference supported by that evidence." *Id.*

*Matter of J.D.*, 376 N.C. 148, 155, 852 S.E.2d 36, 42 (2020).

Here, the Petition alleged Daniel threatened to commit an act of mass violence on educational property in violation of N.C. Gen. Stat. § 14-277.6. N.C. Gen Stat. §

14-277.6 provides: "A person who, by any means of communication to any person or groups of persons, threatens to commit an act of mass violence on educational property or at a curricular or extracurricular activity sponsored by a school is guilty of a Class H felony." N.C. Gen. Stat. § 14-277.6(a) (2021). The State's evidence reflected Daniel verbally communicated his threat to shoot up the school to a group of students as they waited to go to lunch after class, which was overheard by Samantha and Gerald, who both took the threat seriously. This evidence is sufficient to meet each of the elements of N.C. Gen. Stat. § 14-277.6.

Defendant contends the State was required to present evidence the person or persons to whom the threat was directed were, themselves, threatened. Defendant posits that because there was no evidence as to the identity of the individuals in the group of students with Daniel and no testimony from those students, the State cannot prove anyone was threatened. Daniel further argues as there was no evidence Daniel specifically intended to threaten Samantha or Gerald, the evidence does not support a finding Daniel willfully threatened them with shooting up the school.

However, nothing in the statute requires a threat of mass violence to be directed only at the person or persons threatened. To the contrary, the statute requires only the communication of the threat to a person or group—not that the person or group themselves be threatened. Daniel made the threat to a group of students in a manner that could be overheard by other students. Moreover, the fact that Samantha and Gerald were bystanders who overheard the threat is of no

moment. As students at the school, they would reasonably believe they were among those under threat of a school shooting.

Thus, the State presented sufficient evidence that Daniel committed the offense of Communicating a Threat to Commit Mass Violence on Educational Property in violation of N.C. Gen. Stat. § 14-277.6. Therefore, the trial court did not err in denying Daniel's Motion to Dismiss. Consequently, the trial court did not err in adjudicating Daniel as a delinquent juvenile.

III.   Secure Custody Pending Disposition

Daniel contends the trial court abused its discretion by continuing disposition and placing Daniel in secure custody pending disposition. Specifically, Daniel contends there was no good cause shown to continue disposition and no articulated valid basis to hold him in secure custody pending disposition. We agree.

For its part, the State offers no substantive argument to counter Daniel's. Rather, the State first argues Daniel failed to preserve this issue for appeal because Daniel did not designate this ruling in his Notice of Appeal. However, the trial court's written Juvenile Adjudication Order expressly contains the ruling continuing disposition and placing Daniel in secure custody for seven days. Daniel filed written Notice of Appeal from this Juvenile Adjudication Order. Thus, Daniel's Notice of Appeal necessarily included the trial court's ruling continuing disposition and placing Daniel in secure custody. The State's argument is entirely without merit. The State further argues that this issue is moot as Daniel has served the seven days in secure

custody prior to disposition. The State's argument is, again, baseless. We have previously held a similar temporary secure custody order is reviewable on appeal even after its expiration and is properly before us on the grounds that it "is capable of repetition, yet evading review." *In re Z.T.W.*, 238 N.C. App. 365, 373, 767 S.E.2d 660, 666 (2014).

We review the trial court's ruling continuing the disposition hearing and placing Daniel in temporary secure custody pending disposition for an abuse of discretion. *See id.* at 374, 767 S.E.2d at 667. An abuse of discretion occurs "in the event that a court's actions are manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citations and internal quotations omitted).

Under N.C. Gen. Stat. § 7B-2406:

> The court for good cause may continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.

N.C. Gen. Stat. § 7B-2406 (2021). Further, under N.C. Gen. Stat. § 7B-1903(c): "When a juvenile has been adjudicated delinquent, the court may order secure custody pending the dispositional hearing . . ." N.C. Gen. Stat. § 7B-1903(c) (2021).

In this case, after adjudicating Daniel delinquent, the trial court announced it was moving to disposition. The State requested disposition be continued:

> Your Honor, the State will request that the disposition be delayed and hold the juvenile in custody for seven days prior to disposition and I will tell the Court there is a reason for that. He has been adjudicated delinquent on three prior communicating threats. One being another count of disorderly conduct at school. He was on probation for communicating threats when this happened. Obviously, if it was alluded to, I didn't want to allude to it since we are now in a disposition or prior to disposition. Obviously, if there is any time to take this serious it is now. Unlike other ones, there is no history, but this there is history. I will show you the proof. He is a level II with four points. I will show you the approved complaints. Again, this is a pattern of conduct that needs to be stipend [sic], so I will ask Your Honor to waive disposition for seven days in order for the juvenile to be held in secure custody. Thank you.

Defense counsel indicated they were ready to proceed with disposition and while they did not object to the continuance if the State was not ready to proceed, they objected to secure custody pending disposition.

There was no indication by the State that additional time was required to receive additional evidence, reports, assessments, or other information needed in the best interests of the juvenile or to allow for a reasonable time for the parties to conduct expeditious discovery. Thus, there was no good cause for a continuance under N.C. Gen. Stat. § 7B-2406. Moreover, neither the State nor the trial court identified any extraordinary circumstance justifying the continuance. To the contrary, the continuance of the disposition hearing was for the sole purpose of placing Daniel in secure custody as punishment *prior* to any disposition hearing and not for any

- 17 -

legitimate purpose in aid of disposition. On appeal, the State has offered no rationale for holding Daniel in secure custody pending disposition. *Compare In re Z.T.W.*, 238 N.C. App. at 375, 767 S.E.2d at 667 (justification for secure custody pending out of home placement justified by juvenile's school suspension, anger-related difficulties, and his disobedience while living at home and trial court's reasoning juvenile would receive education, medication, and treatment while in secure custody).

Thus, there was no valid basis demonstrated to continue disposition and place Daniel in secure custody pending disposition. Therefore, the trial court abused its discretion by continuing disposition and placing Daniel in secure custody pending disposition. Consequently, we vacate that limited part of the trial court's Juvenile Adjudication Order.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's adjudication of Daniel as delinquent. However, we vacate that portion of the trial court's Juvenile Adjudication Order continuing disposition and placing Daniel in secure custody for seven days pending disposition. As Daniel makes no argument on appeal regarding the Juvenile Level 2 Disposition Order, we also affirm the disposition.

AFFIRMED IN PART; VACATED IN PART.

Judges STROUD and GORE concur.