IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-46

Filed 31 December 2024

Cabarrus County, No. 22 JB 172

IN THE MATTER OF: C.S.

Appeal by juvenile from adjudication and disposition entered 12 September 2023 by Judge Steven A. Grossman in Cabarrus County District Court. Heard in the Court of Appeals 27 August 2024.

*Attorney General Joshua H. Stein, by Deputy General Counsel Tiffany Y. Lucas, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for juvenile-appellant.*

MURPHY, Judge.

In an abundance of caution, in order to solidify our jurisdiction in this matter, we allow Fabian's *Petition for Writ of Certiorari*.[1]

Before a juvenile may be adjudicated as delinquent for violating N.C.G.S. § 14-277.6, the State must demonstrate that the juvenile's communication constituted a true threat outside of the protection of the First Amendment. Under our true threats jurisprudence, a true threat is an objectively threatening statement communicated with subjective intent to threaten a listener or an identifiable group. Based on the surrounding context within which Fabian's alleged threat was communicated and the

---

[1] We use a pseudonym to protect the juvenile's identity and for ease of reading.

self-negating language contained within the alleged threat, the State failed to present substantial evidence that he communicated an objectively threatening statement. Thus, the State failed to present substantial evidence that Fabian communicated a true threat within the meaning of N.C.G.S. § 14-277.6.

Before a juvenile may be adjudicated as delinquent for violating N.C.G.S. § 14-277.5, the State must demonstrate that the juvenile's communication constituted a report of a threat. Here, the State failed to present substantial evidence that Fabian reported a threat to someone else and that Fabian's statement could be reasonably understood as a credible threat. Thus, the State failed to present substantial evidence that Fabian made a report of a threat within the meaning of N.C.G.S. § 14-277.5.

We reverse the trial court's order denying Fabian's motion to dismiss both petitions.

## BACKGROUND

The record before us tends to reflect the following:

On 26 September 2022, fourteen-year-old Fabian posted a screenshot photo of an announcement made by his school, A.L. Brown, that the school would only have a three-day spirit week to the social media platform Snapchat with a superimposed message stating, in full:

**THIS IS SOME FUCKING BULLSHIT, IMMA SHOOT UP AL BROWN**

(for reason that I do not wish to have the police come to my house, it is a joke I do not nor have I ever owned a gun.) Thank you pls don't report me ~~on Tuesday. If~~ there are questions, please email Ms. ▇ at ▇▇@kcs.k12.nc.us.

**SPIRIT WEEK:** We will have a THREE day spirit week. **Monday and Tuesday all students should be in school uniform.**
* Wednesday will be Jersey Day. Please wear your favorite jersey. You may wear jeans with your jersey. If you DO NOT have on a jersey, you CAN NOT wear jeans.
* Thursday will be Lounge Day. You may wear "lounge" clothes on Thursday, but anything that is showing midriff, is see through, or is not school appropriate will not be allowed.
* Friday will be Green and White day. Please come as spirited in green and white as you can. You may wear jeans IF you are in green and white. If you DO NOT have on green and white, you CAN NOT wear jeans. Anything not school appropriate will not be allowed.

**PEP RALLY:** We will also have a school wide Pep Rally on Friday afternoon where we will recognize fall sports teams and homecoming court. The Pep Rally will be in the stadium due to the number of students and staff we have and the capacity of the Bullock Gym.

If there are additional questions, please ask. Let's

> THIS IS SOME FUCKING BULLSHIT, IMMA SHOOT UP
> AL BROWN
>
> (for reason that I do not wish to have the police come to my
> house, it is a joke I do not nor have I ever owned a gun.)
> Thank you pls don't report me

The social media company Snapchat flagged the post as containing a threat of mass violence, and an SBI agent identified the IP address of the account that posted it as belonging to Fabian. Kannapolis Police Department received a tip from the SBI agent, informing them of the flagged post and IP address. Patrol officers made contact with Fabian and his father at their home, and they agreed to a meeting at the police department.

Fabian participated in an interview with the investigating officer and admitted that the post was made by his Snapchat account and that the superimposed text was his own, saying that it was a joke. Fabian stated that he made the post because he was disappointed that the spirit week would not be as fun as other schools' and because he had a dark sense of humor. He provided no other reasoning during the interview and continuously stated "that it was just a joke."

The State filed two juvenile petitions in connection with Fabian's Snapchat post, alleging that Fabian had committed the offenses of making a false report concerning mass violence on educational property in violation of N.C.G.S. § 14-277.5 and communicating a threat to commit an act of mass violence on educational property in violation of N.C.G.S. § 14-277.6.

- 4 -

On 12 September 2023, the trial court presided over a hearing on the two delinquency petitions. At the conclusion of the State's evidence, Fabian, through trial counsel, moved to dismiss both petitions for insufficient evidence, arguing that the State failed to demonstrate that Fabian's Snapchat post constituted a true threat outside of the First Amendment's protection or a false report concerning mass violence. The trial court denied these motions and rendered its order adjudicating Fabian delinquent on both petitions. The trial court proceeded with the disposition hearing and rendered its order placing Fabian on supervised probation for a term of 12 months. On the same day, Fabian filed a written notice of appeal, erroneously denoting the trial court's orders as "entered." On the next day, 13 September 2023, the trial court entered an order adjudicating Fabian delinquent on both charges and a disposition order that Fabian be placed on supervised probation for a term of 12 months. On 14 September 2023, appellate entries were filed.

## ANALYSIS

On appeal from the adjudication and disposition orders, Fabian argues that the trial court erred in denying his motions to dismiss for insufficient evidence; that the trial court erred in allowing the detective to testify about Fabian's statements without first inquiring into the nature of the interrogation during which those statements were made; that the trial court committed plain error in admitting the detective's double-hearsay testimony; and that the trial court failed to make written findings of fact required by N.C.G.S. § 7B-2501(c) in its disposition order.

Furthermore, Fabian argues that, even if he has failed to demonstrate that any individual alleged error caused sufficient prejudice to justify new proceedings, the cumulative effect of any combination of these errors was sufficiently prejudicial to warrant new proceedings.

**A. PWC**

Pursuant to N.C.G.S. §§ 7B-2604 and 7B-2602, Fabian appeals as a matter of right from disposition after adjudication as a delinquent juvenile. *See* N.C.G.S. § 7B-2604(a) (2023); N.C.G.S. § 7B-2602 (2023). Pursuant to N.C.G.S. § 7B-2602, "[n]otice of appeal shall be given in open court at the time of the hearing or in writing within 10 days after entry of the order." N.C.G.S. § 7B-2602 (2023). Here, Fabian filed written notice of appeal one day prior to the order's entry, but after the order was rendered. Fabian concedes this notice may not be timely filed and seeks our review of the order in a contemporaneously filed *Petition for Writ of Certiorari*. In an abundance of caution and in the interest of justice, we allow Fabian's petition to review the orders.

**B. Motion to Dismiss**

On appeal from the trial court's order adjudicating Fabian delinquent for violations of N.C.G.S. §§ 14-277.5 and 14-277.6, Fabian argues that the trial court erred in denying his motion to dismiss both petitions for insufficient evidence. We review the denial of a motion to dismiss for insufficient evidence de novo, *In re T.T.E.*, 372 N.C. 413, 420 (2019), to determine

whether there is substantial evidence of each essential element of the crime and that the [juvenile] is the perpetrator. Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion. In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom.

*State v. Radomski*, __ N.C. App. __, 901 S.E.2d 908, 915, *disc. rev. denied*, 386 N.C. 557 (2024) (cleaned up).

**1. N.C.G.S. § 14-277.6**

Pursuant to N.C.G.S. § 14-277.6,

[a] person who, by any means of communication to any person or groups of persons, threatens to commit an act of mass violence on educational property or at a curricular or extracurricular activity sponsored by a school is guilty of a Class H felony.

N.C.G.S. § 14-277.6(a) (2023).

"This Court has specifically recognized the true threat analysis is applicable to this anti-threat statute to guard against the use of [N.C.G.S. §] 14-277.6 to infringe upon First Amendment rights." *In re D.R.F.*, 293 N.C. App. 544, 549 (2024) (citing *In re Z.P.*, 280 N.C. App. 442, 445 (2021)).

"*True* threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. 66, 72 (2023) (emphasis added).

> The "true" in ["true threats"] distinguishes what is at issue from jests, "hyperbole," or other statements that when taken in context do not convey a real possibility that violence will follow (say, "I am going to kill you for showing up late"). True threats are "serious expressions" conveying that a speaker means to "commit an act of unlawful violence."

*Id.* at 74. "Our Supreme Court defines 'a true threat as an *objectively* threatening statement communicated by a party which possesses the subjective intent to threaten a listener or identifiable group.'" *In re D.R.F.*, 293 N.C. App. at 549 (quoting *State v. Taylor*, 379 N.C. 589, 605 (2021)) (emphasis added).

> In order to determine whether a defendant's particular statements contain a true threat, a court must consider (1) the context in which the statement was made, (2) the nature of the language the defendant deployed, and (3) the reaction of the listeners upon hearing the statement, although no single factor is dispositive.

*Id.* (cleaned up).

This Court recently considered in *In re D.R.F.* whether the State presented substantial evidence to survive D.R.F.'s motion to dismiss the charge of communicating a threat to commit mass violence in violation of N.C.G.S. § 14-277.6. In holding that D.R.F.'s statement met the "objectively threatening" prong of a true threat, we noted that

> the State's evidence did provide evidence of the context in which [D.R.F.]'s alleged threat was made. The evidence showed a group of students was gathered waiting to leave their chorus class to go to lunch when [D.R.F.] made the statement that he was "going to shoot up the school." Two student-bystanders—Samantha and Gerald—testified

consistent with each other that they heard the statement. Samantha was scared enough to report the threat right away. Gerald testified it made him sick to his stomach. He further testified [D.R.F.]'s tone sounded serious. Although Gerald did not see any reaction from other students, he did not hear any laughter. Indeed, to the contrary, a third bystander—Jillian—who did not hear [D.R.F.]'s statement, testified she heard another student respond that they would "bring the guns." When she told Samantha about that statement and learned of [D.R.F.]'s, she too was scared. Unlike the student-witnesses in *Z.P.*, who all heard the alleged threat to blow up the school and believed it to be a joke or were at least equivocal, the student-witnesses in this case did not testify they thought [D.R.F.] was joking or that his statement might have been perceived as a joke. To the contrary, the evidence was that [D.R.F.] sounded serious. The evidence further demonstrated [D.R.F.]'s comment elicited the further comment from a student offering to "bring the guns," which was overheard by the third student-witness and, itself, caused her alarm. Applying the factors set out in *Taylor*, the evidence tended to reflect that, in the context of a school setting, [D.R.F.] threatened to conduct a school shooting in a serious tone and students overhearing the threat took it seriously and were scared. The response to [D.R.F.]'s statement was not laughter but another student's offer to bring the guns. Thus, there was evidence that [D.R.F.]'s statement was objectively threatening.

*Id.* at 551 (internal citations omitted).

We contrasted the factual circumstances present in *In re D.R.F.* with those present in *In re Z.P.*, where

> this Court analyzed whether a student's alleged threat "to blow up the school" objectively constituted a true threat for purposes of a delinquency petition alleging a threat of mass violence on educational property. This Court summarized the evidence in that case:

Three of Sophie's classmates (Madison, Tyler, and Caleb) each testified to hearing Sophie threaten to blow up the school, though none of them testified that they thought she was serious when she made the threat.

Madison testified that Sophie talked about bombing the school. Madison testified that she did not think Sophie was serious when making the statement, and Madison did not report the threat to any adult.

Tyler testified that Sophie "said something about a bomb" and said "she was going to blow up the school." Tyler offered in a joking manner to help her build the bomb and stated that he "thought it was just a joke."

Caleb also heard Sophie's threat about blowing up the school but was equivocal about his perception of Sophie's seriousness, stating that her statement was "either [ ] a joke or it could be serious."

Ultimately, this Court concluded the evidence there did not rise to sufficient objective evidence of a true threat. Instead, we determined:

The State's evidence may create a suspicion that it would be objectively reasonable for Sophie's classmates to think Sophie was serious in making her threat. But we do not believe that the evidence is enough to create an inference to satisfy the State's burden. Indeed, none of Sophie's classmates who heard her statement believed that Sophie was serious, with most of them convinced that she was joking. She had made outlandish threats before, never carrying out any of them.

*Id.* at 550-51 (quoting *In re Z.P.*, 280 N.C. App. at 446). We distinguished between

the State's evidence in the two cases, noting that,

- 10 -

> [u]nlike the student-witnesses in *Z.P.*, who all heard the alleged threat to blow up the school and believed it to be a joke or were at least equivocal, the student-witnesses in this case did not testify they thought [D.R.F.] was joking or that his statement might have been perceived as a joke. To the contrary, the evidence was that [D.R.F.] sounded serious. The evidence further demonstrated [D.R.F.]'s comment elicited the further comment from a student offering to "bring the guns," which was overheard by the third student-witness and, itself, caused her alarm. Applying the factors set out in *Taylor*, the evidence tended to reflect that, in the context of a school setting, [D.R.F.] threatened to conduct a school shooting in a serious tone and students overhearing the threat took it seriously and were scared. The response to [D.R.F.]'s statement was not laughter but another student's offer to bring the guns. Thus, there was evidence that [D.R.F.]'s statement was objectively threatening.

*Id.* at 551.

Here, Fabian's statement was communicated in a Snapchat post, rather than a message to any particular person, as text superimposed over a screenshot of the school's text-message announcement that its spirit *week* would be only three days, with students expected to "be in school uniforms" on Monday and Tuesday. Fabian referred to this screenshotted message by stating, "THIS IS SOME FUCKING BULLSHIT, IMMA SHOOT UP AL BROWN[.]" Within the very same superimposed text containing the alleged threat, Fabian explicitly disclaimed "it is a joke" and "I do not nor have I ever owned a gun." He asked that viewers not "report [him]" as he "[did] not wish to have the police come to [his] house[.]" Indeed, the investigating officer testified at trial that Fabian stated he made the post because "he was

disgruntled with the [school's] [s]pirit [w]eek program[,]" which "didn't seem as fun to him as other schools' [s]pirit [w]eek[]"; and that, during the investigation, Fabian and his father each stated that Fabian "has a dark sense of humor."

At trial, the investigating officer indicated that he was made aware of the post through a tip from an SBI agent, who determined that a Snapchat account registered to Fabian made a Snapchat post that was "flagged" by the social media company as "a threat of mass violence." The record contains no evidence indicating how the social media company "flagged" the post as containing a threat and no evidence that any person outside of the social media company, SBI agent, and investigating officer was made aware of, reported, or feared the alleged threat. The investigating officer testified that he was not sure if the school was made aware of the threat before it was brought to law enforcement's attention and, "outside of being aware and the heightened sense of being on the lookout," he was not aware of any requirement that the school "modify the schedule or make any changes to the school day as a result of [Fabian's] post."

On our de novo review, in the light most favorable to the State, the State did not present substantial evidence that Fabian's statement contained a "true threat" in violation of N.C.G.S. § 14-277.6. As in *In re Z.P.*, even if "[t]he State's evidence may create a suspicion that it would be objectively reasonable" to think Fabian was serious in making his threat, the evidence is not "enough to create an inference to satisfy the State's burden." *In re Z.P.*, 280 N.C. App. at 446. Under *Taylor*, both the context of

Fabian's communication—as a post on social media indicating disapproval of the school's three-day spirit week—and the nature of his included negating language—his explicit statement that he did not then and had never before owned a gun to "shoot up" the school and the characterization of the alleged threat portion of the post as a "joke"—are factors which indicate that Fabian's communication was not "objectively threatening[,]" but a distasteful "joke." *See Counterman*, 600 U.S. at 74 ("The 'true' in ['true threats'] distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow . . . ."). Indeed, as in *In re Z.P.*, the State presented no evidence that any student or staff member felt threatened or notified the school of the posting. The State's evidence is insufficient to persuade a rational juror that Fabian's Snapchat post was an objective "serious expression conveying that [Fabian] mean[t] to commit an act of unlawful violence." *Id.* (marks omitted); *accord In re Z.P.*, 280 N.C. App. at 446.

As we hold that the State failed to present substantial evidence that Fabian made an objectively threatening statement, we need not address whether Fabian "possesse[d] the subjective intent to threaten a listener or identifiable group[]" when he made the post to his Snapchat account and reverse the order adjudicating Fabian delinquent under N.C.G.S. § 14-277.6. *See Taylor*, 379 N.C. at 605.

**2. N.C.G.S. § 14-277.5**

Pursuant to N.C.G.S. § 14-277.5,

> [a] person who, by any means of communication to any person or groups of persons, makes a report, knowing or having reason to know the report is false, that an act of mass violence is going to occur on educational property or at a curricular or extracurricular activity sponsored by a school, is guilty of a Class H felony.

N.C.G.S. § 14-277.5(b) (2023).

To survive a motion to dismiss the charge of making a false report concerning mass violence on educational property in violation of N.C.G.S. § 14-277.5, the State must demonstrate that Fabian was "making a report" when he posted to Snapchat. *See In re D.W.L.B.*, 267 N.C. App. 392, 394 (2019) (cleaned up) ("[W]e conclude that the petition . . . fails to allege a violation of [N.C.G.S. §] 14-277.5. Specifically, it fails to allege that [D.W.L.B.] was 'making a report' when he wrote the graffiti."). Here, the State failed to present substantial evidence that Fabian made *a report*; and, therefore, the trial court erred in denying Fabian's motion to dismiss the charge of making a false report concerning mass violence on educational property.

In *In re D.W.L.B.*, this Court determined that the petition charging D.W.L.B. insufficiently "allege[d] the elements of a violation of [N.C.G.S. §] 14-277.5[]" because "it fail[ed] to allege that [D.W.L.B.] was 'making a report' when he wrote" "BOMB INCOMING" with black magic marker on the wall of an elementary school boy's bathroom. *See id.* at 393-94. This Court held that the facts alleged in the petition did not constitute making a report in violation of N.C.G.S. § 14-277.5 "for two independent reasons." *Id.* at 394. First,

> the petition fail[ed] to allege that [D.W.L.B.] directed his "bomb incoming" graffiti message to anyone in particular or that anyone in particular actually saw it. Indeed, the essence of a [N.C.G.S. §] 14-277.5 violation is not so much uttering or writing a statement, but rather making a report of the statement to someone else. By way of illustration, if [D.W.L.B.] had written the "BOMB INCOMING" message and then immediately erased it, he would not be guilty of making a report as described in [N.C.G.S. §] 14-277.5. But the petition in this case, if held valid, would serve to initiate criminal proceedings for such behavior all the same.

*Id.* Second, the petition failed to allege a violation of N.C.G.S. § 14-277.5

> because it would not be reasonable for a person seeing the grafitti on the bathroom wall to construe said graffiti as *a report* of a credible threat. Indeed, a visitor to the bathroom seeing the grafitti would not know when the grafitti was written.

*Id.* at 394-95 (emphasis in original).

We vacated the adjudication and disposition orders against D.W.L.B., reasoning as follows:

> We note that our research has not revealed any case law or General Assembly official comment indicating what type of conduct constitutes the "making of a report" within the meaning of [N.C.G.S. §] 14-277.5. We construe statutory language to proscribe as a Class H felony under this Section only credible reports, that is, those that a reasonable person would believe could represent a threat. Again, by way of illustration, if a person calls in a threat that "Martians will be invading the school with heat rays this afternoon," no reasonable person would believe that she was in danger of imminent death by Martian invasion. Such a phone threat might be a crime, . . . but we do not believe that the General Assembly contemplated criminalizing such behavior as a Class H felony.

> In the same respect, we conclude that no one would reasonably believe that the words "BOMB INCOMING," written in a bathroom at some unknown time in the past and obviously by an elementary-school-aged student, represented a report of an actual threat that a bomb was incoming to the school. Such behavior may constitute a crime, but not a Class H felony.

*Id.* at 395 (emphasis omitted) (cleaned up).

Under similar reasoning, the State here failed to present substantial evidence that Fabian made a report when he posted the screenshot with superimposed text to his Snapchat account. First, the post itself was not "directed . . . to anyone in particular[.]" *Id.* at 394. Second, the record contains no indication that any person to whom the post was communicated actually saw Fabian's post. The record indicates only that the social media company's flagging system—and thereafter the law enforcement officers who were notified—saw Fabian's post. The investigating officer testified that he was not sure if the school was made aware of the threat before it was brought to law enforcement's attention. Furthermore, the investigating officer testified that law enforcement was not made aware of any statements about the post made directly to any individuals.

Alternatively, for the reasons explored more fully above, *see supra Part B.1.*, it would not be reasonable for a person seeing the Snapchat post to construe said post as a report of a credible threat, particularly due to its self-negating nature and the context in which it was communicated. *See id.* at 394-95.

On our de novo review, in the light most favorable to the State, the State failed to present substantial evidence that Fabian made a *report* within the meaning of N.C.G.S. § 14-277.5, as the State failed to present evidence that Fabian directed the post to anyone in particular, that anyone unrelated to the investigation saw the post, or that the post contained a credible threat. We need not reach Fabian's remaining arguments, as they are now moot.

## **CONCLUSION**

The trial court erred in denying Fabian's motion to dismiss the petitions alleging offenses of communicating a threat to commit mass violence on educational property and making a false report concerning mass violence on educational property for insufficient evidence.

REVERSED.

Judge ZACHARY concurs.

Judge GORE concurs in result only.